Mitchell A. SAVOY, Jr.

v.

UNITED STATES of America.

Civ. A. No. 78–1955.

United States District Court,
E. D. Louisiana.

April 4, 1978.

Vincent J. Glorioso, Jr., of Kierr, Gainsburgh, Benjamin, Fallon & Lewis, New Orleans, La., for plaintiff.

Thomas L. Jones, Admiralty & Shipping Section, Dept. of Justice, Washington, D. C., John R. Schupp, Asst. U. S. Atty., New Orleans, La., for defendant.

CHARLES SCHWARTZ, District Judge.

This matter came on for trial on a previous date and thereafter was taken under submission pending further memoranda from counsel on Proposed Findings of Fact and Conclusions of Law. Having received and carefully considered these memoranda, the record, and the law, the Court rules as follows:

To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any of the conclusions of law constitute findings of fact, they are so adopted.

## FINDINGS OF FACT

The USS KING, the vessel that is the subject of the present litigation, was authorized for construction in 1955 and built at the Puget Sound Naval Shipyard in Washington, a facility owned and operated by the United States through the Department of the Navy. The vessel was designed, owned, and operated at all pertinent times as a guided-missile warfare destroyer. In April 1974 the vessel was decommissioned in order to be overhauled and modernized pursuant to a contract awarded on April 19, 1974 between the United States and Boland Marine and Manufacturing Co., Inc. ("Bo-

land"). The USS KING arrived at Boland's shipyard on April 25, 1974, at which time all her officers and crew were reassigned and transferred from the vessel.

Plaintiff, Mitchell A. Savoy, Jr., was employed by Boland as a journeyman pipefitter and was assigned to work aboard the USS KING. Plaintiff worked for several weeks aboard the vessel up to the time of his accident on August 29, 1974. On this date Mr. Savoy had been assigned by his union supervisor's assistant to perform work on the 02 level (the second deck above the main deck of the vessel). At approximately 1700 hours, Mr. Savoy and his co-worker, Joseph Maone, after having completed the work on the 02 level, proceeded to return to the main deck. In order to reach the main deck, plaintiff was required to descend the stairway or ladder [1] between the 01 level and the main deck on the starboard side near passageway 1–68–1–L, Frames 70–72. With a bucket of tools in his right hand,[2] plaintiff faced the stairway, put his left hand on a handrail, and as he placed his right foot on the first step, that foot came out from under him, causing him to bounce on his buttocks approximately 10 feet down the steps.[3] All the parties have stipulated that there was no grease, oil, or other foreign substance on the stairway at the time of his fall. No other evidence was elicited bearing probatively on the direct cause of Mr. Savoy's fall.

The particular stairway or ladder in question had an overall diagonal length of approximately 10 feet 8 inches from top to bottom with a 64° 15′ angle of inclination measured from the horizontal. The stairway had 9 steps approximately 12 inches apart, each with an aluminum oxide abra-

sive tread of a 4 inch depth and 24 inch width. The stairway also had handrails on both sides.[4]

Plaintiff contends that the stairway or ladder in question was hazardous and that the steepness was the cause of his fall. In support of this contention, plaintiff introduced the testimony of Sheldon Cass, a naval architect, who for many years had surveyed and designed stairways and ladders for various commercial vessels, but never for naval or other special purpose vessels of the United States. Mr. Cass testified that since the angle of inclination, as measured from the horizontal, was in excess of 50°, the ladder was unsafe and hazardous.[5] Moreover, he stated that the stairway was deceptive in that it encouraged the user to descend in a forward position with his back to the stairway. Therefore, the user could only place his heel on the tread of each step instead of the ball of the foot which is more stable and less slippery. In order to reduce the angle of the subject stairway to 50°, Mr. Cass calculated that an additional 37 inches of lateral floor space would be required.

On cross-examination, however, Mr. Cass testified that he had never designed a guided missile destroyer or any other naval vessel, and that certain design considerations might be applicable to a warship that would not be contemplated in the construction of a commercial vessel. His design and survey experience, however, is based on commercial vessels subject to certain Coast Guard regulations inapplicable to the case *sub judice*. Apparently conservation of space is a prime consideration in the interest of design and efficiency of a special purpose naval warship such as the USS KING, and is the

1. The Court uses the words "stairway" and "ladder" interchangeably. The use of either word is not intended to imply a characterization of its physical attributes.

2. The bucket, measuring 12″ × 7″, contained several wrenches, a hammer, and a chisel, among other items.

3. Mr. Savoy's testimony regarding the scenario leading up to his fall is corroborated by the testimony of Mr. Maone.

4. *See* Exhibits P–3 through P–15.

5. The recommended angle of 50° was derived from a Coast Guard regulation, 46 C.F.R. § 92.10–25, applicable to commercial vessels contracted for on or after January 1, 1959. Because the USS KING was constructed prior to that date and was a public vessel of the United States, Mr. Cass admitted that the vessel and the United States were exempt from compliance with the regulation.

reason why it is specifically exempted from the applicable Coast Guard regulations on angle of inclination. Thus, plaintiff has failed to prove that the stairway in question was in any manner defective or negligently designed.

Furthermore, the court finds that plaintiff has failed to prove by a preponderance of the evidence that the inclination of the ladder or stairway in question proximately caused his fall and injury. To the contrary, it is just as likely that the fall was precipitated by an imbalance created by the bucket of tools in his right hand. Significantly, plaintiff testified that while he had worked on only one vessel previously, he had ascended and descended the same stairway on the USS KING without difficulty on several occasions. Scuddy Bourg, an engineering technician for the U.S. Navy, testified that he had traversed the subject ladder aboard the USS KING, both up and down, approximately 100 times without incident and that this ladder is no steeper than other ladders on naval vessels. The court concludes that plaintiff has failed to demonstrate that the inclination of the ladder was the cause of the accident. To hold otherwise would be to engage in speculation.

Although plaintiff testified that the steps looked "smooth," "worn," and "shiny," the court further holds that the evidence fails, even by way of inference, to show that the worn condition of the treads of the stairway caused or contributed to plaintiff's accident.[6]

## CONCLUSIONS OF LAW

The court has subject matter jurisdiction pursuant to the Public Vessels Act, 46 U.S.C. § 781 *et seq.* Since Mr. Savoy was a ship repairman and thus a longshoreman, his sole remedy is a third-party negligence action against the vessel. 33 U.S.C. § 905 (b) (Supp. II 1972).

The general standards found in the Restatement (Second) of Torts, §§ 342, 343 and 343A guide the court in its determination of negligence. *Gay v. Ocean Transport & Trading, Ltd.,* 546 F.2d 1233 (5th Cir. 1977). Applying these standards to the case before it, the court concludes that the evidence is insufficient to prove that the particular stairway in question, as situated aboard the naval vessel USS KING was unsafe, dangerous, or hazardous. Moreover, plaintiff has failed to prove by a preponderance of the evidence that the subject stairway either caused his accident or was negligently designed or maintained. As stated above, the evidence also fails to substantiate any finding that a worn condition of the stairway treads caused or contributed to plaintiff's accident.[7] In sum, the evidence simply fails to indicate what caused Mr. Savoy's fall, and plaintiff has failed to carry the burden of proof as to defendant's alleged negligence.

By passage of the 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act, Congress sought to free vessels of any liability without fault. *Gay v. Ocean Transport & Trading, Ltd., supra; Brown v. Mitsubishi Shintaku Ginko,* 550 F.2d 331 (5th Cir. 1977); *Hess v. Upper Mississippi Towing Corp., supra.* Accordingly, plaintiff's claim founded on a theory of no-fault or strict liability is also without merit. For all the reasons stated above, plaintiff's complaint is hereby DISMISSED at plaintiff's costs.

Let judgment be entered accordingly.

6. Plaintiff apparently agrees with this conclusion since he proposed same on page 5 of his "Proposed Findings of Fact and Conclusions of Law."

7. Nevertheless, it is noteworthy that the contract between Boland and the United States provided for the inspection and report on and repair of the ladder treads by Boland. (*See* Ex. P–15; D–1A; *see also* deposition of LCDR William A. Crumly at pp. 10, 34.) Thus, any argu-

ment that the United States breached its duty to provide plaintiff with a safe place to work is unfounded since this duty does not extend to protect employees of an independent contractor from a danger the contractor was hired to correct. *See Hess v. Upper Mississippi Towing Corp.,* 559 F.2d 1030 (5th Cir. 1977), *cert. denied,* 435 U.S. 924, 98 S.Ct. 1489, 55 L.Ed.2d 518 (1978); *see also Bossard v. Exxon Corp.,* 559 F.2d 1040 (5th Cir. 1977).