Arthur P. MOSER and Darthea Moser,
Plaintiffs-Appellees,

and

The Travelers Insurance Company,
Intervenor-Appellee,

and

Crest Engineering, Inc., Third Party
Defendant-Appellee,

v.

TEXAS TRAILER CORPORATION,
Defendant-Appellant-Appellee,

v.

CRESCENT PETROLEUM,
Defendant-Appellant.

No. 78–2263.

United States Court of Appeals,
Fifth Circuit.

Aug. 11, 1980.

Kenneth Tekell, Houston, Tex., for Texas Trailer.

Robert C. Floyd, Houston, Tex., for Crescent Petroleum.

John N. Barnhart, Houston, Tex., for Arthur Moser.

John Palmer Hutcheson, Houston, Tex., for Travelers & Crest Engineering, Inc.

Before TUTTLE, AINSWORTH and SAM D. JOHNSON, Circuit Judges.

TUTTLE, Circuit Judge:

Arthur Moser, an employee of Crest Engineering Company, was injured on February 27, 1974 when he fell from the second floor of a housing module to the deck of a barge on which the module was stored. He filed an action in admiralty against ten defendants. This case is an appeal from the trial court's finding that two of the defendants, the manufacturer of the unit and the owner of the unit, were negligent. We affirm in part, reverse in part, and remand.

Defendant Crescent Petroleum Company, the owner of the housing module, was involved in developing an oil project in the Persian Gulf. Crest Engineering Company, Moser's employer, was retained by Crescent to provide engineering services in the planning of the offshore production facilities. Crest's services included the conversion of a fire damaged tanker into an oil storage unit. A housing module was to be manufactured and shipped to the Gulf and placed on the tanker to serve as a barracks for Crescent employees. Defendant Texas Trailer Corporation was awarded the contract to build the housing module. The module was designed by Texas Trailer and built on the premises of Texas Trailer.

The module is a two-story, 44 foot by 50 foot unit. Outside stairs lead from the base of the unit to a second floor, exterior walkway, and a second set of stairs from the walkway to a heliport on top of the module. The second floor walkway consists of metal grates, three feet by six feet, bolted together. The module was designed to be lifted by crane, and the module sale included spreader bars and lifting hardware for this purpose. In order to lift the module by crane, it was necessary to remove two of the metal floor gratings in the second floor walkway, creating openings through which the lifting cables could be lowered to the lifting points at the module's base. Texas Trailer did not design the grates to swing up to create the openings; rather, it planned to remove the two grates completely, place them on top of the adjacent grates, and wire them down.

The contract between Texas Trailer and Crescent provided that Texas Trailer was to deliver the module, tied down, onto a barge furnished by Crescent. Crescent hired defendant Shipco, Inc., to be responsible for arranging for the forwarding of the module. Shipco contracted with defendant TMT Shipping & Chartering Company, which chartered the barge MM240 onto which the module was to be lifted. Texas Trailer arranged with defendant Greens Bayou Terminal to load and tie down the module onto the barge.

Texas Trailer delivered the module on February 19, 1974. Texas Trailer employees created the openings in the second floor walkway prior to the time Greens Bayou Terminal began its work of lifting the module onto the barge. The grates were removed and wired onto adjacent grates, creating two three foot by six foot openings. The removed gratings caused a three-quarter inch rise in the walkway where they were wired to the adjoining grates. Texas Trailer did not replace the openings after the lift was completed, did not request that Greens Bayou Terminal replace them, and did not place any guardrails or warnings about the openings. The openings remained in this condition until February 27, the day on which the module was to be moved from the barge onto the ship the SS Stockenfels for transportation to the Persian Gulf.

On the morning of February 27, Moser was present at the loading site in his capacity as an employee of Crest Engineering Company, to observe the loading of the module and report any damage that occurred. Before the lifting apparatus was actually connected to the module, Moser boarded the barge to check the air-conditioning units on the second floor of the housing module. According to the testimony of a stevedore on the barge, Moser climbed the stairs to the walkway, went down the walkway, passed the first opening, stepped across the second opening, and climbed the stairs to the heliport. A few minutes later, he descended the stairs to the walkway and proceeded toward the stairs leading down to the barge. At this point, he either stepped into the first opening or tripped over the removed grating and fell through the opening to the dock. Moser was rendered unconscious and suffered numerous injuries in the fall.

Moser filed suit in the district court for the Southern District of Texas against Texas Trailer, Crescent, and others to recover damages for the injuries sustained in the fall. The complaint alleged that jurisdiction was based upon diversity, 28 U.S.C. § 1332, and requested a jury trial. Five of the six named defendants were served and

answered, also requesting a jury trial. On February 24, 1976, Moser filed an amended petition which alleged that the suit was within the admiralty jurisdiction of the court and pursued under section 9(h) of the Federal Rules of Civil Procedure without a jury. A certificate was attached, signed by defense counsel, stating that the filing of the amendment was unopposed. Moser subsequently filed a motion to strike the jury demand, which the court granted.

Following trial before the court without a jury, the court found that both Texas Trailer and Crescent had been negligent, but dismissed all other defendants. The court held that Texas Trailer owed a duty to construct and deliver the module in a safe condition, and that Texas Trailer should have known the openings on the walkway would be a hazard to anyone using it. Knowing this, Texas Trailer negligently failed to cover the openings, and allowed them to remain in this condition. The court found that Crescent, as the owner of the module, had a duty to maintain the module in a safe condition and negligently failed to discover and remedy the hazard. The court also found that Moser was contributorily negligent and that his lack of care contributed to 50 percent of his injuries. Of the remaining 50 percent, 60 percent of the damage was attributed to Texas Trailer, and 40 percent to Crescent. The court reviewed the evidence of damages and found that Moser sustained total damages of $884,786.55, and was therefore entitled to recover $442,393.28.

Texas Trailer and Crescent appeal from the trial court's judgment. Both appellants assert that the court erred in determining that it had maritime jurisdiction over the plaintiff's cause of action, and that the court erred in denying their request for a jury trial. Texas Trailer maintains that the court's finding of negligence is clearly erroneous, and Crescent argues that the trial court erred in finding Crescent liable to the employees of an independent contractor. Crescent also contends that the award of damages was excessive, and that the court erred in denying its request for indemnity against Texas Trailer and Crest.

## JURISDICTION

Until the Supreme Court's decision in *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), maritime tort jurisdiction was determined almost exclusively on the basis of the locality of the tort. Perfunctory application of the locality standard led to anomalous results in some cases,[1] and was criticized by courts and commentators. *See Watz v. Zapata Off-Shore Co.*, 431 F.2d 100, 110 (5th Cir. 1970). In *Executive Jet*, the plaintiff's aircraft struck a flock of birds and crashed in the waters of Lake Erie. Refusing to find admiralty jurisdiction, the Supreme Court emphasized the problems inherent in a mechanical application of the locality test and held that the mere fact that a tort occurs in navigable waters is not sufficient, in airplane negligence cases, to confer maritime jurisdiction. "It is far more consistent with the history and purpose of admiralty to require also that the wrong bear a significant relationship to traditional maritime activity." 409 U.S. at 268, 93 S.Ct. at 504.

Following the Supreme Court's pronouncement, this Court, in *Kelly v. Smith*, 485 F.2d 520 (5th Cir. 1973), *cert. denied sub nom. Chicot Land Co. v. Kelly*, 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974) adopted the *Executive Jet* standard for determining jurisdiction in all maritime tort cases. The court delineated the following factors to be considered in determining whether the wrong bears a significant relationship to maritime activity: the functions and roles of the parties; the types of vehicles and instrumentalities involved; the causation and the type of injury; and traditional concepts of the role of admiralty law. 485 F.2d at 525.

■ Application of these factors to the instant case leads us to conclude that admiralty jurisdiction is present. The injured party was, at the time of the injury, performing services in connection with the loading of cargo, a traditional maritime activity. The vehicle involved was a barge, "whose function was transportation across navigable waters, a traditional role of watercraft." *See id.* at 526. The instrumentality involved, the housing module, was cargo in the process of being lifted from the barge to a ship, and the injury was caused by a condition created solely to facilitate loading of the cargo. Furthermore, there is an important national interest, which militates in favor of admiralty jurisdiction, in a uniform rule governing duties to remedy dangerous conditions created for the purpose of loading cargo in navigable waters. Based upon these considerations, we hold that this incident is so related to traditional maritime activity that the duty of the owner of the cargo and that of the party creating the condition must be determined by principles of maritime law.[2]

This conclusion is supported by the decision in *Drachenberg v. Canal Barge Co.*, 571 F.2d 912 (5th Cir. 1978), finding maritime

---

1. *Compare Smith & Son v. Taylor*, 276 U.S. 179, 48 S.Ct. 228, 72 L.Ed. 520 (1928) (no maritime jurisdiction because plaintiff was standing on a wharf when struck by hoist on a ship) *with Minnie v. Port Huron Terminal Co.*, 295 U.S. 647, 55 S.Ct. 884, 79 L.Ed. 1631 (1935) (admiralty jurisdiction over suit by longshoreman who was struck by a hoist while standing on deck).

2. The defendants argue that the plaintiff, as a shore-based employee performing work for a shore-based client, does not come within the admiralty jurisdiction of this Court. The fact that a party is shore-based is not controlling; admiralty has frequently dealt with the duty of land-based parties to persons aboard vessels in navigable waters. *See, e. g., In re Motor Ship Pacific Carrier*, 489 F.2d 152 (5th Cir.) (mari-

time jurisdiction over paper mill whose smoke obstructed navigation and caused collision), *cert. denied sub nom. Union Camp Corp. v. Gypsum Carrier, Inc.*, 417 U.S. 931, 94 S.Ct. 2643, 41 L.Ed.2d 235 (1974); *Kelly v. Smith*, 485 F.2d 520 (5th Cir. 1973) (maritime jurisdiction over members of hunting club who fired rifles from shore into boat in river), *cert. denied sub nom. Chicot Land Co. v. Kelly*, 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974). The court in both cases noted that the instrumentalities involved—firearms and smoke—were not inherently indigenous to land, and that the hazards caused by the defendants presented sufficient danger to maritime commerce to require the assumption of admiralty jurisdiction. *In re Motor Ship Pacific Carrier*, 485 F.2d at 156; *Kelly*, 485 F.2d at 526.

jurisdiction over the injury of a shore-based employee who was killed while supervising the unloading of cargo for his shore-based employer. Judge Brown stated: "[W]e agree with the District Court's finding that it had maritime jurisdiction over this case because the accident occurred on the deck of the barge, which was in navigable waters at the time, the accident arising out of an incident directly connected with traditional maritime activity—the unloading of the ship's cargo." *Id.* at 917.

We affirm the trial court's finding of admiralty jurisdiction to hear this case.

### Right to Jury Trial

The appellants also argue that the trial court denied their right to a jury trial by permitting Moser to amend his complaint to allege admiralty jurisdiction.

Rule 9(h) of the Federal Rules of Civil Procedure provides that a plaintiff whose claim is within admiralty jurisdiction and also within some other ground of jurisdiction may include in his complaint a statement identifying the claim as one in admiralty for purposes of rule 38(e) of the Federal Rules. If this is done, the case will be tried in admiralty and, under rule 38, will be tried without a jury.[3] Rule 9(h) also states that amendment of a pleading to add an identifying statement is governed by rule 15. Rule 15(c) provides that an amendment relates back to the date of the original pleading if the claim asserted in the amendment arose from the occurrences set out in the first pleading.

Moser originally filed a complaint alleging diversity jurisdiction and demanding a jury trial. After five of the defendants had answered and also demanded a jury trial, he amended his complaint to state that the case was within the admiralty jurisdiction of the court and "pursued under Rule 9(h) without a jury." A certificate was attached to the amendment, signed by counsel for the defendants, stating that the filing of the amendment was unopposed. Subse-

quently, and over the defendant's objections, the trial court granted Moser's motion to quash the jury demand.

 Under rules 9(h) and 15(c), the trial court's actions were appropriate. Moser's amendment identifying the suit as one in admiralty related back to the original date of filing and replaced his allegation of diversity jurisdiction and demand for jury trial. The defendants maintain, however, that a jury trial request may not be withdrawn except through compliance with rule 39(a) of the Federal Rules of Civil Procedure, which provides:

> *By Jury.* When trial by jury has been demanded as provided in Rule 38, the action shall be designated upon the docket as a jury action. The trial of all issues so demanded shall be by jury, unless (1) the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury or (2) the court upon motion or of its own initiative finds that a right of trial by jury of some or all of those issues does not exist under the Constitution or statutes of the United States.

Since they did not expressly stipulate to trial without a jury, and since a right to trial by jury did exist under diversity jurisdiction, the defendants argue that the requirements of rule 39 have not been met and they have been deprived of their right to jury trial.

The conflict presented by rules 9(h) and 39(a) was discussed by this Court in *Johnson v. Penrod Drilling Co.*, 469 F.2d 897 (5th Cir. 1972), *affirmed*, 510 F.2d 234 (5th Cir.) (en banc), *cert. denied*, 423 U.S. 839, 96 S.Ct. 68, 46 L.Ed.2d 58 (1975). In *Johnson*, the plaintiff filed suit alleging diversity and admiralty jurisdiction and requested a jury trial. The trial court later granted Johnson leave to amend his complaint to allege only admiralty jurisdiction under rule 9(h). The

---

**3.** Fed.R.Civ.P. 38(e) provides:

*Admiralty and Maritime Claims.* These rules shall not be construed to create a right

to trial by jury of the issues in an admiralty or maritime claim within the meaning of Rule 9(h).

court of appeals held that plaintiffs could not, "through the device of amending their complaints to state admiralty and maritime claims under Rule 9(h), effectively withdraw their demands for jury trials without compliance with the specific procedures set forth in Rule 39(a)." 469 F.2d at 903. In reaching this conclusion, the court relied upon *Banks v. Hanover Steamship Corporation*, 43 F.R.D. 374 (D.Md.1967), which also held that a court should not allow a plaintiff to amend a complaint under rule 9(h) without first complying with rule 39(a). The *Banks* court stated:

> [P]laintiff seeks leave under Rule 15 to amend its complaint to strike the paragraph alleging diversity jurisdiction and to add a statement pursuant to Rule 9(h), identifying the claim as an admiralty and maritime claim. Rule 15 permits the requested amendment at this time "only by leave of court or by written consent of the adverse party," but "leave shall be freely given when justice so requires." . . . The proposed amendment is opposed both by defendant and by third-party defendant.
>
> A request to amend a complaint by adding such an identifying statement is subject to the provisions of Rules 15, 38 and 39, . . .. The Court's discretion under rule 15 should be governed by the principles stated in Rules 38 and 39 . ..

*Id.* at 380.

The defendants rely upon these two cases to support their argument that the trial court denied their right to jury trial. There is, however, a critical difference in the case at bar and *Johnson*. Rule 15(a), which governs amendment of pleadings, states that, after a responsive pleading has been filed, a party may amend his pleading in one of two ways—by leave of court or written consent

of the adverse party.[4] *Johnson* and *Banks* deal with a trial court's discretion under rule 15(a) to grant a plaintiff leave, over the objection of the opposing party, to amend a complaint to assert admiralty jurisdiction under rule 9(h). The courts concluded that a trial court may not grant leave to amend without obtaining the written consent of opposing parties pursuant to rule 39(a). The *Johnson* and *Banks* holdings should not apply where, as here, opposing counsel has consented to the filing of the amendment. Moser attached to the amended complaint a certificate, signed by counsel for all opposing parties, that the filing of the amendment was not opposed. In this situation, the discretion of the trial court under rule 15(a) is not invoked, and the reasoning in *Johnson* is inapplicable. We hold that where a defendant opposes an amendment, the trial court's exercise of discretion under rule 15(a) to grant leave to amend must be preceded by defendant's consent, under rule 39(a), to proceed without a jury. But where the defendants themselves consent to the filing of an amendment which states that the case is pursued "in admiralty without a jury," application of rule 39(a) is unnecessary to protect the defendant's right to jury trial. The trial court properly granted Moser's request to quash the jury demand.

### *Texas Trailer's Liability*

The trial court found that Texas Trailer, as the manufacturer and seller of the housing module, owed a duty to construct and deliver the module in a safe condition, that Texas Trailer knew or should have known that persons such as Moser would be using the second-floor walkway, and that the openings were hazardous to anyone using the walkway. The

---

**4.** Fed.R.Civ.P. 15(a) provides:

> *Amendments.* A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

court concluded that Texas Trailer negligently failed to cover the floor openings after the module was placed on the Barge MM240 at the Wisco Terminal on February 19, 1974, and negligently permitted the floor openings to remain uncovered when the module was returned to the Wisco Terminal for removal of an outside stairway by employees of Texas Trailer. On appeal, Texas Trailer argues (1) that the trial court was clearly erroneous in finding Texas Trailer negligent in failing to cover the floor openings; and (2) that the trial court's finding that Texas Trailer's actions were the proximate cause of the injury is clearly erroneous.

Texas Trailer maintains that its failure to cover the openings did not constitute negligence because Moser's presence was not foreseeable. Archie Hayes, an employee of Texas Trailer, testified that Texas Trailer knew that people would be working on the second floor walkway when the module was moved. He also testified that anyone who wanted to inspect the air-conditioning equipment would be required to use the walkway. Upon this evidence, we cannot say that the trial court erred in its finding that Moser's use of the walkway was foreseeable.

In addition, Texas Trailer maintains that its failure to cover the openings while the module was stored on the barge did not constitute the proximate cause of Moser's accident because, even if Texas Trailer had replaced the grates, the stevedores would have removed them, in preparation for loading the module onto the ship, before Moser boarded the barge. Maxie Smith, the stevedore foreman, testified that he arrived at the barge at about 8:00 on the morning of February 27, several hours prior to Moser's arrival. The ship's crew was rigging the spreader bars that would be used to load the module, and the stevedores were standing back waiting for the equipment to be readied for the lift. Smith testified that his duty was to take the cables that ran from the spreader bar through the opening in the grill and to attach the cable to the eye. He also stated that it would have been part of his work to remove the gratings prior to making the lift, if the gratings had been covering the holes.

The following exchange took place between Maxie Smith and Mr. Tekell, attorney for one of the defendants:

Q: Now, I'm sure, from your observations, that you had already noticed the grates opened.

A: Right.

Q: And if they had been closed, you would have gotten Arthur Moore or somebody else to have assisted you in opening them, wouldn't you?

A: Right.

Q: In preparation for lifting the module?

A: Right.

Q: Isn't that right?

A: Right.

Q: So when Mr. Moser came on the barge that morning, if the openings in the walkway had not been there, you would have created those openings before he came on, wouldn't you, as part of your work in getting it ready?

A: Oh, yes.

Texas Trailer relies upon this statement to support its contention that its failure to replace the grates was not the proximate cause of Moser's accident. Since the grates would have been opened by the stevedores prior to Moser's arrival, Texas Trailer's failure to cover the opening while they were not in use had no connection with the fall.

Although Texas Trailer uses the phrase "proximate cause," in its argument, the problem raised is actually that of causation in fact. Before a court turns to the policy considerations embraced by the term "proximate cause," it must first determine whether the defendant's alleged negligence in fact caused the defendant's injury. *See Harrison v. Flota Mercante Grancolumbiana*, 577 F.2d 968, 983 (5th Cir. 1978); *Spinks v. Chevron Oil Co.*, 507 F.2d 216, 222 (5th Cir. 1975).

Prosser defines and illustrates the problem of causation in fact in terms of the "but for" or "sine qua non" rule:

[A]n act or an omission is not regarded as a cause of an event if the particular event would have occurred without it. A failure to fence a hole in the ice plays no part in causing the death of runaway horses which could not have been halted if the fence had been there. A failure to have a lifeboat ready is not a cause of the death of a man who sinks without trace immediately upon falling into the ocean. The failure to install a proper fire escape on a hotel is no cause of the death of a man suffocated in his bed by smoke. The omission of a traffic signal to an automobile driver who could not have seen it if it had been given is not a cause of the ensuing collision. The omission of crossing signals by an approaching train is of no significance when an automobile driver runs into the sixty-eighth car. The presence of a railroad embankment may be no cause of the inundation of the plaintiff's land by a cloud burst which would have flooded it in any case.

W. Prosser, The Law of Torts § 41, at 238 (4th ed. 1971).

■ The question thus presented is, "Did Texas Trailer, by failing to cover the openings during the time the module was housed on the barge, cause Moser's fall?" Or, stated another way, "If Texas Trailer had replaced the grates after the initial lift, would Moser's fall have been prevented?" The answer would be no. The testimony of the stevedore is undisputed that, as a part of the loading procedure, the grates would have been removed on the morning of February 27, prior to Moser's arrival at the dock. Thus, Texas Trailer's failure to recover the openings on February 19, even if otherwise negligent, did not cause Moser's injury. We cannot accept Moser's argument that "such facts even if believed do not excuse Texas Trailer's negligence." A defendant's actions must be the cause in fact of a plaintiff's injuries in order for the plaintiff to be able to recover. *Id.* at 239. We reverse the trial court's finding that Texas Trailer is liable to Moser for negligently failing to cover the floor openings.

■ In addition to his claim that Texas Trailer negligently failed to cover the floor openings, Moser alleged at trial that Texas Trailer was negligent in designing the lift openings without the protection of guardrails or warnings. A tort cause of action in admiralty exists for the negligent design and/or manufacture of a product, even though the conduct complained of may have occurred ashore. *See Harrison v. Flota Mercante Grancolombiana,* 577 F.2d 968 (5th Cir. 1978); *Jig the Third Corp. v. Puritan Marine Insurance Underwriters Corp.,* 519 F.2d 171 (5th Cir. 1975), *cert. denied,* 424 U.S. 954, 96 S.Ct. 1429, 47 L.Ed.2d 360 (1976); *Watz v. Zapata Off-Shore Co.,* 431 F.2d 100 (5th Cir. 1970); *Schaeffer v. Michigan-Ohio Navigation Co.,* 416 F.2d 217 (6th Cir. 1969); *cf. Simpson Timber Co. v. Parks,* 369 F.2d 324 (9th Cir. 1966), *vacated and remanded,* 389 U.S. 909, 88 S.Ct. 210, 19 L.Ed.2d 227 (1967). Since the trial court based its finding of liability upon Texas Trailer's failure to cover the openings, it did not reach the issue of negligent design and failure to warn. We therefore remand to the trial court for a determination of these issues.

*Crescent's Liability*

At trial, Moser maintained that Crescent's liability could be based upon either of two theories: (1) As the owner of the module, it had a duty to maintain the module in a condition that would not involve an unreasonable risk of harm to others; and (2) as charterer of the Barge MM240, Crescent was liable for negligence under § 905 of the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901 *et seq.* The trial court found Crescent liable under the first theory, holding that Crescent "as the owner and possessor of the housing module owed a duty to Mr. Moser to maintain the module in a safe condition." The court found that Crescent, as the owner of the module, negligently failed to discover and remedy the hazard created by the removal of the gratings, and failed to exercise any affirmative care to make the module safe for the reception of invitees. Because we conclude that the tri-

al court misstated Crescent's duty, we reverse.

The trial court viewed Crescent as the owner of premises with the attendant duty of care to ensure that the premises are safe for those who enter. The condition which caused Moser's accident, however, was not a condition inherent in the housing module as premises. Rather, it was a condition created by the manufacturer of the unit, temporary in nature and only for the purpose of loading the module onto a ship. A cargo owner's responsibility to protect against such a condition should not be the equivalent of the duty of a premises owner to discover and remedy hazards in the premises.

Land-based concepts of premises liability have been adopted by this Court as the general standard to be used in negligence suits against vessels under § 905 of the LHWCA. In *Gay v. Ocean Transport & Trading, Ltd.*, 546 F.2d 1233 (5th Cir. 1977), the court followed the leads of the Second and Fourth Circuits in adopting the Restatement (Second) of Torts to be applied in actions brought under section 905(b) for injuries caused by the negligence of the vessel. 596 F.2d at 1238. Restatement (Second) of Torts § 343 (1965) provides:

> *Dangerous Conditions Known to or Discoverable by Possessor*
>
> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

It was this concept of premises liability, adopted in *Gay* as the standard for determining shipowners' liability, that the trial court imposed as the duty of an owner of cargo. The trial court held that Crescent had a duty as owner of the housing module, to discover and warn business invitees of the unsafe condition of the module. Since the court based Crescent's liability upon its duty as owner of the cargo rather than as owner of the vessel, we feel that application of principles of premises liability is inappropriate. In taking this view, we emphasize that the module, at the time of Moser's injury, was cargo rather than premises in use, and that the "defect" was a condition created for the purpose of loading the cargo, rather than one inherent in the module as premises. In reviewing admiralty cases in this court which have applied concepts of land-based premises liability, we have found no case in which the owner of cargo has been held to a duty to ensure that cargo in transit is maintained in a condition safe for invitees.[5]

█ In our view, the question to be determined is whether an owner of cargo, having engaged independent contractors to manufacture, load, and ship the cargo, has an affirmative duty to ensure that conditions created by one contractor for the purpose of loading do not constitute a hazard to others. Analysis of this issue does not depend upon application of premises liability concepts, but should be determined according to the legal principles applicable to employers of independent contractors.

Since Moser's claim against Crescent as owner of the module is a maritime negligence action rather than a suit under the LHWCA, federal maritime law applies. However, "general maritime law incorpo-

---

**5.** Liability under this principle has been imposed only on shipowners. *See, e. g., Stockstill v. Gypsum Transportation*, 607 F.2d 1112, 1117 (5th Cir. 1979), *petition for cert. filed*, 48 U.S. L.W. 3620 (March 25, 1980); *Smith v. Eastern Seaboard Pile Driving, Inc.*, 604 F.2d 789, 795 (2d Cir. 1979); *Samuels v. Empresa Lineas Maritimas Argentinas*, 573 F.2d 884, 885 (5th Cir. 1978); *Hess v. Upper Mississippi Towing Corp.*, 559 F.2d 1030, 1033 (5th Cir. 1977), *cert. denied*, 435 U.S. 924, 98 S.Ct. 1489, 55 L.Ed.2d 518 (1978); *Brown v. Mitsubishi Shintaku Ginko*, 530 F.2d 331, 333 (5th Cir. 1977); *Savoy v. United States*, 469 F.Supp. 301, 303 (E.D.La. 1978).

rates the general law of torts when not inconsistent with the law of admiralty." *Harrison v. Flota Mercante Grancolombiana*, 577 F.2d 968, 977 (5th Cir. 1978); *see Spinks v. Chevron Oil Co.*, 507 F.2d 216, 222 n.8 (5th Cir. 1975); *Alcoa Steamship Co. v. Charles Ferran & Co.*, 383 F.2d 46, 50 (5th Cir. 1967), *cert. denied*, 393 U.S. 836, 89 S.Ct. 111, 21 L.Ed.2d 107 (1968). Accordingly, we turn to the general law of torts to determine the duties of an employer of an independent contractor under the circumstances presented in this case. *See McCormack v. Noble Drilling Corp.*, 608 F.2d 169, 174–75 (5th Cir. 1979).

Moser contends that Crescent should be liable under the principles dealing with independent contractors because Crescent retained general supervision and control of the work. Section 414 of the Restatement (Second) of Contracts (1965) provides:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

Under this provision, an employer who retains control has a duty to prevent subcontractors from carrying out their work in a dangerous manner or from performing their work in a way that creates a dangerous condition to others. Crescent is not liable under this section, however, because it did not retain the degree of control necessary to trigger application of section 414. Comment C to section 414 states:

In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to the employer, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

It is evident from the trial court's findings that Crescent did not retain control over the work. The court referred to Crescent's possession through its contractors, and specifically noted that no Crescent employee even inspected the module or was in physical contact with the module during or after the loading onto Barge MM240. The court also found that Crescent had no knowledge of the dangerous condition on the walkway. These findings are fully supported by the evidence, which shows that Crescent had no actual control over the details of the work, but merely inspected and received progress reports. Absent control over the manner of performance, Crescent owed no duty to discover and remedy hazards created by its independent contractors, and, "absent a 'peculiar unreasonable risk of physical harm,' . . . owed no duty to take special precautions." *McCormack v. Noble Drilling Corp.*, 608 F.2d 169, 175 (5th Cir. 1979)[6].

---

**6.** Moser also maintains that Crescent is liable under Section 412 of the Restatement (Second) of Torts (1965) which provides:

> One who is under a duty to exercise reasonable care to maintain land or chattels in such condition as not to involve unreasonable risk of bodily harm to others and who entrusts the work of repair and maintenance to an independent contractor, is subject to liability for bodily harm caused to them by his failure to exercise such care as the circumstances may reasonably require him to exercise to ascertain whether the land or chattel is in

reasonably safe condition after the contractor's work is completed.

Application of this section is limited to possessors of land who are required to maintain the land in safe condition, *id.* comment (b); *see id.* §§ 340–350; 364–371, and persons supplying chattels to be used for their business purposes, *id.* comment (b); *see id.* §§ 391–398, 408. The module is not considered to be land or "premises" for the reasons discussed *supra*, and does not fall within the sections dealing with supplies and manufacturers of chattels. *See id.*

For these reasons, we reverse the trial court's holding that Crescent, as owner of the module, negligently failed to discover and remedy the hazardous condition.

Moser also asserted at trial that Crescent was the actual charterer of the barge, through its agents Shipco and TMT, and as such, was liable as the shipowner for purposes of section 905(b) of the LHWCA. The trial court did not reach this issue, and we therefore remand for a determination of Crescent's status as owner of the vessel and any attendant duties under 905(b). *See* note 5 *supra*.

### Damages

The trial court awarded Moser $884,-786.55 in damages, to be reduced by 50% because of contributory negligence—$352,-511.95 in lost earnings, past and future, $21,274.60 in medical expenses, and $511,-000.00 as compensation for pain and mental anguish. Crescent asserts that the trial court's assessment of lost earnings and pain and suffering is excessive and clearly erroneous. Although the judgment for damages must be vacated because we reverse the liability holdings, we consider this issue because if we approve the damages judgment the new trial which we hold must be had on the question of liability will be limited to those issues only and the judgment for damages will stand.

■ The court found that, because of injuries sustained in the fall, Moser was unable to perform as an engineer and that it was highly improbable that he could succeed in any other professional capacity. Crescent maintains that the evidence does not support the trial court's finding that Moser is unable to work. We cannot agree that the trial court's finding was clearly erroneous. Moser, Moser's wife, Dr. John

Coates, Moser's doctor, and Dr. Norfleet, Moser's psychiatrist, all testified that emotional problems stemming from Moser's head injury had rendered him unable to work. To rebut Moser's contention that he is unable to work, Crescent relies upon the fact that Moser jogs and plays racquetball. In light of this conflicting evidence, we must uphold the trial court's finding that Moser is unable to work due to emotional problems. The ruling is not clearly erroneous.

■ The trial court awarded $511,000 in damages for pain and mental anguish, past and future. The court found that Moser sustained the following physical injuries: bruised temporal lobes, skull fracture, pain and limitation of movement of the right arm, fractured ribs, and chest pains. He underwent surgery to improve the condition of his right arm, but still has permanent restriction of action and pain. Because of this problem, he will need continued medication for pain.

The trial court also found that Moser had developed severe emotional problems as a result of the head injuries received in the fall. Testimony indicates that he suffers from headaches, has difficulty sleeping, cannot concentrate, and has difficulty reading and performing simple calculations. He also is subject to outbursts of violence, which had affected his family relationships. His psychiatrist testified that the head injuries resulted in a psychoneurotic depressive reaction with suicidal tendencies. He suffers from a substantial decrease in sexual desire, marked dizziness, and a loss of energy. Crescent does not contend that these findings are clearly erroneous, but maintains that the damages awarded, $511,000, are clearly excessive. They point out that Moser jogs six to seven miles a day, plays

---

Moser also asserts that Crescent had a duty as shipper of the module to remedy any condition dangerous to longshoremen or other workmen who might be using the walkway. However, *Simpson Timber Co. v. Parks,*, 369 F.2d 324 (9th Cir. 1966), *vacated and remanded,* 389 U.S. 909 [88 S.Ct. 210, 19 L.Ed.2d 227] (1967), on which Moser relies, dealt with the duty of a manufacturer-shipper responsible for packag-

ing a product to package products for shipment in a way that will not create unreasonably dangerous conditions for those who are working on the ship. *Id.* at 327. This case has no bearing on Crescent, the owner of the module, but would refer instead to the duties of Texas Trailer, the manufacturer responsible for preparing the module for loading and transport.

racquetball, and occasionally participates in marathon races.

In *Hawkes v. Ayers*, 537 F.2d 836 (5th Cir. 1976), the court set out the standard for reviewing an award of damages. "A fundamental principle of American jurisprudence is that the fact-finder determines the quantum of damages in civil cases. The function of reviewing courts with respect to damages awards . . . is limited to resolving the question whether the trier of fact abused its discretion." *Id.* at 837; *see* *McKinzie v. Fleming*, 588 F.2d 165 (5th Cir. 1979). In light of the evidence of Moser's extensive injuries and mental and emotional problems stemming from the fall, we cannot say that the trial court abused its discretion in making the award.[7]

The case is AFFIRMED in part, REVERSED in part, and REMANDED for a determination of Texas Trailer's liability for negligent design and Crescent's liability under section 905(b) of the LHWCA.

---

7. Crescent also argues that it was entitled to indemnity from Texas Trailer, because its negligence, if any, was passive while Texas Trailer was actively negligent. Because we reverse the bases for the trial court's findings of negligence, we do not reach this issue.