761 F.2d 1369
 1986 A.M.C. 1634
 Joseph SOLANO, Plaintiff-Appellant,
v.
Chris BEILBY, Amerford International Corporation and
California United Terminals, Defendants-Appellees.
Michael L. URLEVICH, Plaintiff-Appellant,
v.
Chris BEILBY, Amerford International Corporation and
California United Terminals, Defendants-Appellees.
 No. 83-5591.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 7, 1985.
Decided May 24, 1985.
 
 Newton R. Brown, Mitchell Levy, Wilmington, Cal., Louis Goldberg, Beverly Hills, Cal., for plaintiff-appellant.
 Erwin E. Adler, Richards, Watson, Dreyfuss & Gershon, Los Angeles, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before WALLACE, NELSON and CANBY, Circuit Judges.
 NELSON, Circuit Judge:
 
 
 1
 Joseph Solano and Michael Urlevich, both longshoremen, brought an admiralty action in the Central District of California under 28 U.S.C. Sec. 1333 and Fed.R.Civ.P. 9(h) against California United Terminals for negligence resulting in personal injuries. The district court, finding that there was no duty of care owed to plaintiffs, ruled in favor of the defendant terminal operator in a summary judgment. Solano and Urlevich filed a timely appeal raising the following issues for our review: 1) whether California United had actual, constructive, or inquiry notice of the dangerous condition of the 1946 Cadillac, and 2) whether California United had a duty to warn plaintiff of this dangerous condition. We affirm.
 
 FACTS
 
 2
 Defendant, California United Terminals, is a marine cargo terminal located at the Port of Long Beach, California. An Australian citizen bought a 1946 Cadillac, in need of restoration, from a local resident and asked the seller to arrange to ship the automobile to Australia. Amerford International, the freight forwarder, informed the seller to deposit the vehicle at California United's terminal pending shipment on the vessel Allunga.
 
 
 3
 Plaintiffs, Joseph Solano and Michael Urlevich, were longshoremen employed by Crescent Wharf & Warehouse Co., a stevedoring company. Solano and Urlevich were assigned to load the Cadillac onto the vessel. The cargo terminal played no part in the loading process; no control was exercised, and no terminal equipment was used. The terminal was responsible only for storing the vehicle until the employees of the stevedoring company picked it up for loading.
 
 
 4
 The stevedore supervisor instructed one longshoreman to steer the car, while the other pushed from behind with a jitney. While the Cadillac was being pushed down a ramp onto the ship, it rolled ahead of the jitney, up an incline, and then began to roll backwards. Since the brakes were inoperative, the driver was unable to prevent the car from colliding with the jitney. Plaintiffs were both injured in the collision.
 
 
 5
 Each longshoreman brought an admiralty and maritime claim under rule 9, Fed.R.Civ.P., based on 28 U.S.C. Sec. 1333. The longshoremen alleged that California United negligently failed to inspect the cargo, to warn the plaintiffs of the potential danger in loading the car onto the ship ramp, and to supervise the longshoremen in loading the cargo.
 
 
 6
 The district court found no duty on the part of the defendant to inspect the car, to warn plaintiffs of the defective brakes, or to supervise plaintiffs in loading the cargo. Since the court found that the terminal operator fulfilled the applicable standard of care of a cargo terminal operator and bailee under the circumstances, defendant's motion for summary judgment was granted. Solano and Urlevich appeal.
 
 I. JURISDICTION
 
 7
 This court is obligated to raise jurisdictional issues sua sponte. Miller v. Transamerican Press, Inc., 709 F.2d 524, 527 n. 2 (9th Cir.1983); In re Exennium, Inc., 715 F.2d 1401, 1402 (9th Cir.1983). The threshold question, therefore, is to determine whether this action is within the federal courts' admiralty jurisdiction. Historically, admiralty jurisdiction was invoked if a tort occurred on or over navigable waters. Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 253, 93 S.Ct. 493, 497, 34 L.Ed.2d 454 (1972); Owens-Illinois, Inc. v. United States District Court, 698 F.2d 967, 969 (9th Cir.1983). In Executive Jet, however, the Supreme Court rejected exclusive reliance on locality and held that in addition to having a maritime situs "the wrong must bear a significant relationship to traditional maritime activity." Executive Jet, 409 U.S. at 268, 93 S.Ct. at 504. Although Executive Jet addressed maritime jurisdiction over an aviation tort claim, subsequent decisions have applied the two-part test to torts outside the aviation context. Foremost Insurance Co. v. Richardson, 457 U.S. 668, 674, 102 S.Ct. 2654, 2658, 73 L.Ed.2d 300 (1982); Owens-Illinois, Inc., 698 F.2d at 969-70.
 
 
 8
 In examining the first part of the maritime tort test, courts have traditionally defined the locus of the tort as the place where the injury occurs. See, e.g., Executive Jet, 409 U.S. at 266, 93 S.Ct. at 503; Smith v. Pan Air Corp., 684 F.2d 1102, 1111 (5th Cir.1982); Edynak v. Atlantic Shipping Inc. Cie. Chambon Maclovia S.A., 562 F.2d 215, 221 (3d Cir.1977), cert. denied, 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978); Kelly v. United States, 531 F.2d 1144, 1146 (2d Cir.1976); Carroll v. Protection Maritime Insurance Co., 512 F.2d 4, 8 (1st Cir.1975); Oppen v. Aetna Insurance Co., 485 F.2d 252, 256 (9th Cir.1973). The injury in the present case occurred on the ramp of a ship, satisfying the requirement of maritime locality.
 
 
 9
 To determine whether the second part of the maritime tort standard is met, i.e., whether the alleged tort has a sufficient nexus to traditional maritime activity, this Circuit considers four factors:
 
 
 10
 (1) traditional concepts of the role of admiralty law;
 
 
 11
 (2) the function and role of the parties;
 
 
 12
 (3) the types of vehicles and instrumentalities involved; and
 
 
 13
 (4) the causation and nature of the injury suffered.
 
 
 14
 Owens-Illinois, Inc., 698 F.2d at 970 (citing T.J. Falgout Boats, Inc. v. United States, 508 F.2d 855, 857 (9th Cir.1974), cert. denied, 421 U.S. 1000, 95 S.Ct. 2398, 44 L.Ed.2d 667 (1975)).
 
 
 15
 In Foremost Insurance Co., the Supreme Court defined the principle focus of maritime jurisdiction as "the protection of maritime commerce." Foremost Insurance Co., 457 U.S. 668, 674, 102 S.Ct. 2654, 2658, 73 L.Ed.2d 300 (1982). The loading of cargo onto a vessel by two longshoremen falls squarely within the ambit of traditional maritime services or activities in furtherance of commerce. The goal of uniformity in the law governing maritime industries and the concern for providing remedies to those confronting the dangers of maritime employment militate toward admiralty jurisdiction in this case. Austin v. Unarco Industries, 705 F.2d 1, 11 (1st Cir.), cert. dismissed, --- U.S. ----, 104 S.Ct. 34, 77 L.Ed.2d 1454 (1983); Kelly v. Smith, 485 F.2d 520, 526 (5th Cir.1973), cert. denied, 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974).
 
 
 16
 Nor does an appraisal of the other three factors dissuade us of the presence of a significant maritime nexus with plaintiffs' tort claims. The longshoremen's function of loading or unloading a ship's cargo has traditionally been a concern of admiralty law. Atlantic Transport Co. v. Imbrovek, 234 U.S. 52, 61-62, 34 S.Ct. 733, 735, 58 L.Ed. 1208 (1914); Austin, 705 F.2d at 11; Edynak, 562 F.2d at 221. California United Terminals is a marine cargo terminal that holds cargo for shipment. But even if we were to find the maritime nexus of the terminal operator too attenuated, the nature of the defendant's activities is not the dispositive criterion. Oppen, 485 F.2d at 257.
 
 
 17
 The vehicles involved--an automobile and a jitney--are not inherently indigenous to maritime commerce, but viewed as instrumentalities to a vessel loading operation, are no less common to marine commerce than to land operations. The facts in the present case are easily distinguishable from Peytavin v. Government Employees Insurance Co., 453 F.2d 1121 (5th Cir.1972), in which an action for whiplash injuries allegedly suffered from a rear-end automobile collision on a floating pontoon at a ferry landing was held not to be within admiralty jurisdiction because of the absence of a connection with maritime interests or activities. Id. at 1122, 1126-27. The significant inquiry in the present case is not whether the instrumentality was an automobile rather than an item peculiar to maritime commerce, but whether the injury was inflicted during the conduct of a maritime service, such as loading cargo.
 
 
 18
 In determining whether the causation and nature of injury had a sufficient maritime flavor, other courts have focused on the site of consummation of the injury rather than the origin of the negligent act or omission. See, e.g., Smith v. Pan Air Corp., 684 F.2d at 1111 (place where negligence or wrongful act occurs not decisive; greater significance placed on function being performed by injured person); Sperry Rand Corp. v. Radio Corp. of America, 618 F.2d 319 (5th Cir.1980) (products liability action against manufacturer held cognizable in admiralty notwithstanding that component parts were not manufactured for solely maritime uses); Edynak, 562 F.2d 215 (longshoreman working aboard vessel struck by defendant's pier-based crane); In re Motorship Pacific Carrier, 489 F.2d 152 (5th Cir.), cert. denied, 417 U.S. 931, 94 S.Ct. 2643, 41 L.Ed.2d 235 (1974) (smoke from defendant's shore-based paper mill blinded pilot of ship resulting in collision with plaintiff's bridge); Kelly v. Smith, 485 F.2d 520 (defendant game preserve keeper shot poacher escaping in motorboat). Kelly v. Smith illustrates a particularly liberal application of maritime jurisdiction to an isolated incident of a pilot shot by a shore-based defendant. The court in Kelly reached this result by applying the same four-factor test our Circuit has adopted. In light of the preceding cases, we conclude that the fact that a direct cause of the longshoremen's injuries may have been shore-based negligence does not preclude the extension of admiralty jurisdiction to the accident on the ship's ramp.
 
 
 19
 The Second Circuit is the only circuit that has specifically addressed the applicability of admiralty jurisdiction to terminal operators. In Leather's Best, Inc. v. S.S. Mormaclynx, 451 F.2d 800 (2d Cir.1971), the court held that an action against a terminal operator for negligent loss of cargo is a state claim governed by state law, not cognizable in federal maritime jurisdiction. The plaintiff sued the terminal operator and the ocean carrier after his cargo disappeared from a guarded pier area where the vessel had been unloaded. The court found that the terminal operator, as bailee of the goods on the dock, was not a party to the maritime contract. More significantly, the court held that admiralty tort jurisdiction could not be applied because the tort--the theft of the cargo--occurred on land and "admiralty jurisdiction in tort 'is necessarily bounded by locality.' " [Citations omitted]. Id. at 808. The court never reached the question whether the terminal operator was engaged in traditional maritime activity because the case was decided prior to Executive Jet, and therefore a strict locality test was applied. However, even if Leather's Best had been decided after Executive Jet, the result would have been the same, because the Supreme Court's requirements for maritime situs and nexus for admiralty tort jurisdiction are conjunctive. The nonmaritime situs of the loss of cargo would have dictated the application of state law. See Colgate Palmolive Co. v. S/S Dart Canada, 724 F.2d 313 (2d Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 2181, 80 L.Ed.2d 562 (1984) (following Leather's Best in finding action against terminal operator for negligent loss of cargo a state claim). Leather's Best is therefore inapposite to the instant case. Here, plaintiffs' injuries occurred on the ramp of a vessel in navigable waters, during the cargo loading operation, a traditional maritime service. We therefore find that this case falls within the federal courts' admiralty jurisdiction.
 
 II. DUTY OF CARE
 
 20
 A summary judgment is reviewed on appeal de novo. Lojek v. Thomas, 716 F.2d 675, 677 (9th Cir.1983). The reviewing court must determine whether there is any genuine issue of material fact and whether the substantive law was correctly applied. Amaro v. Continental Can Co., 724 F.2d 747, 749 (9th Cir.1984). The facts must be viewed in the light most favorable to the party against whom the judgment was granted. Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc., 690 F.2d 1240, 1250 (9th Cir.1982), cert. denied, 459 U.S. 1227, 103 S.Ct. 1234, 75 L.Ed.2d 468 (1983).
 
 
 21
 The district court found that California United Terminals acted as bailee for the automobile deposited by Amerford International, the freight forwarder. Since this suit is brought under admiralty jurisdiction, the terminal's liability as a bailee is a matter of federal law. Leather's Best, 451 F.2d at 812. If the bailment relationship is established for the mutual benefit of the bailor and bailee, the bailee must exercise ordinary care toward the subject of the bailment. United Barge Co. v. Notre Dame Fleeting & Towing Service, 568 F.2d 599, 602 n. 5 (8th Cir.1978); Dravo Mechling Corp. v. Standard Terminals, 557 F.Supp. 1162, 1166 (W.D.Pa.1983), aff'd mem., 729 F.2d 1446 (3d 1984). California United was not informed of any operational defects in the car, and was not requested to inspect the car, or to tag the car in order to provide a warning of potential danger due to defective brakes. Despite appellants' contention that a custom of tagging existed in the Port of Long Beach, the requirement to tag can only be triggered by knowledge of a latent defect. Therefore, even viewing the facts in the light most favorable to the appellants, absent a knowledge of a defect, and absent a duty to inspect, there can be no obligation to tag the cargo.
 
 
 22
 There is no precedent for imposing a duty of care on the terminal operator toward third parties, such as longshoremen. Stevedores are generally responsible for protecting their employees, the longshoremen, from potential danger. Scindia Steam Navigation Co. v. De Los Santos, 451 U.S. 156, 170, 101 S.Ct. 1614, 1624, 68 L.Ed.2d 1 (1981). The appellants' assertions that all parties involved in the loading operation should follow a uniform standard of care is controverted by the case law. Id. (shipowner may rely on stevedore to protect longshoremen from hazards and owes no duty to longshoremen to inspect or supervise cargo operations); Federal Marine Terminals v. Burnside Shipping Co., 394 U.S. 404, 89 S.Ct. 1144, 22 L.Ed.2d 371 (1969) (shipowner's duty to stevedore differs from duty to longshoremen); Marant v. Farrell Lines, Inc., 550 F.2d 142, 144 (3d Cir.1977) (stevedore not vessel owner, has primary responsibility for longshoremen's safety); Humble Oil & Refining Co. v. Philadelphia Ship Maintenance Co., 444 F.2d 727, 730 (3d Cir.1971) (stevedore's liability for indemnification is not coextensive with shipowner's liability to injured longshoreman); Dravo Mechling Corp., 557 F.Supp. at 1166-67 (shipowner did not share stevedore's duty to supervise cargo loading).
 
 
 23
 We do not decide here whether there might ever be circumstances under which a terminal operator might owe a duty of care to parties other than the bailor. We confine our holding to the present facts. If a terminal operator is not informed of any latent defects in deposited cargo, and if the bailment contract does not expressly require inspection or tagging, then the operator's duty of ordinary care to the bailor of the cargo is not breached by a failure to inspect for latent defects. We therefore agree with the district court that there is no genuine issue as to any material fact and defendant California United Terminals is entitled to judgment as a matter of law.
 
 CONCLUSION
 
 24
 This case falls within the admiralty jurisdiction of the federal courts. The defendant, California United Terminals, having fulfilled its duty of care as bailor of the cargo, is entitled to summary judgment.
 
 
 25
 AFFIRMED.