762 F.2d 750
 Olga L. COOK, Personal Representative of the Estate of
Robert C. Cook, deceased, Plaintiff-Appellant,
v.
EXXON SHIPPING COMPANY, a Delaware corporation, and Humble
Oil & Refining Corporation, a Delaware
corporation, Defendants-Appellees.
 No. 84-3995.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 6, 1985.
Decided June 3, 1985.
 
 Raymond J. Conboy, Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland, Or., for plaintiff-appellant.
 Mildred J. Carmack, Guy C. Stephenson, Schwabe, Williamson, Wyatt, Moore & Roberts, Portland, Or., for defendants-appellees.
 Appeal from the United States District Court for the District of Oregon.
 Before KENNEDY and NORRIS, Circuit Judges, and LYNCH,* District Judge.
 NORRIS, Circuit Judge:
 
 
 1
 This is an action against Exxon Shipping Company ("Exxon") for the wrongful death of Robert C. Cook.[1] Cook's death resulted from injuries suffered as a result of an explosion aboard a vessel owned by Exxon. At the time of the explosion, the vessel was being repaired at Northwest Marine and Ironworks ("NWMI"), and Cook was doing repair work as an employee of NWMI. Appellant Olga L. Cook, who brought this action as personal representative of the estate of her husband, appeals a summary judgment in favor of Exxon.[2] The appeal requires us to consider the duty of care owed by a shipowner to employees of an independent repair company making repairs on a ship.
 
 
 2
 * It is not disputed that at the time of the explosion, Cook was covered by the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. Secs. 901-950 (1982). In Scindia Steam Navigation Co. v. De Los Santos, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981),[3] the Supreme Court defined the duty of care owed by a shipowner to a stevedore and his longshoremen under the Act. The court stated:
 
 
 3
 "The shipowner thus has a duty with respect to the condition of the ship's gear, equipment, tools, and work space to be used in the stevedoring operations; and if he fails at least to warn the stevedore of hidden danger which would have been known to him in the exercise of reasonable care, he has breached his duty and is liable if his negligence causes injury to a longshoreman.... It is also accepted that the vessel may be liable if it actively involves itself in the cargo operations and negligently injures a longshoreman or if it fails to exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation."
 
 
 4
 Scindia, 451 U.S. at 167, 101 S.Ct. at 1622.
 
 
 5
 We hold that the duties of care delineated in Scindia apply to employees of independent repair companies who are working on a vessel as well as to longshoremen. In so holding, we follow the decision of the Fifth Circuit in Hill v. Texaco, Inc., 674 F.2d 447 (5th Cir.1982), which applied the Scindia standards to "any independent contractor and its harborworker employees covered by the ... [Longshoremen's and Harbor Workers' Compensation Act] and working aboard ship." Id. at 451. We agree with the Fifth Circuit that there is no reason to limit the Supreme Court's holding in Scindia to stevedores.
 
 II
 
 6
 Appellant argues that Exxon is not entitled to summary judgment because the evidence raises genuine issues of material fact with respect to whether Exxon breached its duty of care to Cook under the Scindia standards. Specifically, appellant contends that there are triable issues as to whether Exxon failed to warn Cook of a hidden danger on the vessel and whether Exxon actively involved itself in the repair operations, and then negligently caused Cook to be injured.
 
 
 7
 The evidence presented to the district court in connection with Exxon's motion for summary judgment indicates that the explosion occurred when one of Cook's co-workers cut through the deck of the vessel with a torch and ignited a bunker fuel tank located immediately beneath the deck. There is also evidence that John H. King, Jr., Exxon's repair superintendent, knew the location of the fuel tank. He admitted, moreover, that there were no deck markings that indicated the location of the fuel tanks closer than five or six feet from the point where the pipes penetrated the deck and that he did not tell the NWMI employees that the bunker fuel tank was close to the pipes.
 
 
 8
 Exxon contends that as a matter of law it satisfied its duty to warn of hidden dangers because of three undisputed facts: (1) it provided NWMI in 1979, three years before the repair work in question, with blue prints that showed the location of the fuel tanks; (2) two people employed by NWMI in positions of responsibility, NWMI's general superintendent and its marine chemist and safety inspector, both had worked on this area of the ship before; and (3) NWMI's general superintendent knew of the location of the fuel tank.
 
 
 9
 In our view, the evidence cited by Exxon does not establish as a matter of law that Exxon satisfied its duty to warn the workers of a hidden danger. Rather, a trier of fact could reasonably find on the basis of this evidence that Exxon breached its duty to warn.
 
 
 10
 Appellant also argues that a trier of fact could find on the evidence presented that the work on the vessel was carried out under the direct supervision and orders of King, and that King told the NWMI employees to do "hot work," meaning use of a torch, on the deck. We agree. There is evidence that King, who knew where the fuel tank was located, not only authorized hot work to be performed inches from a bulkhead separating the work area from the bunker fuel tank, but also that he changed the work description from use of an air arc to hot work. An air arc is a device which permits workers to cut a weld without cutting through the deck itself. A trier of fact could find that the workers could have avoided an explosion if they had used an air arc rather than a torch.
 
 
 11
 Exxon's response to appellant's contention that the work was carried out under the direct supervision of King is that the work was actually carried out under the supervision of NWMI's superintendent. Exxon argues that King merely acted as the representative of the shipowner to ensure that his specifications were carried out. We believe, however, that this does not entitle Exxon to judgment as a matter of law on appellant's claim that Exxon actively involved itself in the repair work in a manner that negligently caused the injury. See Scindia. 451 U.S. at 167, 101 S.Ct. at 1622.
 
 
 12
 We conclude that based on the evidence before the district court, there are triable issues of fact as to whether the explosion was proximately caused by a breach of duty by Exxon to warn the workers of a hidden danger or by King's direct supervision of the repair work in a negligent manner.
 
 
 13
 The summary judgment for Exxon is VACATED and the case is REMANDED for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Eugene F. Lynch, U.S. District Judge, Northern District of California, sitting by designation
 
 
 [1]
 Appellants named Exxon and Humble Oil & Refining Corporation as parties to this appeal. The July 11, 1984 judgment of the district court names only Exxon as a defendant but states that the entire action is dismissed. Since we construe this judgment as dismissing the entire action, it is an appealable final order under 28 U.S.C. Sec. 1291 (1982)
 
 
 [2]
 We review de novo an order granting summary judgment. Lojek v. Thomas, 716 F.2d 675, 677 (9th Cir.1983)
 
 
 [3]
 In Scindia, a longshoreman was struck and injured by sacks of wheat that fell from a pallet suspended by a defective ship's winch. The stevedore had been using the winch for two days prior to the accident despite its malfunction. The longshoreman sued the shipowner under 33 U.S.C. Sec. 905(b), which provides that a longshoreman injured "by the negligence of a vessel ... may bring an action against such vessel as a third party" and that the vessel's liability "shall not be based upon the warranty of seaworthiness."