**Fernando JACOBO, Plaintiff–Appellant,**

v.

**UNITED STATES of America,
Defendant–Appellee,**

**and**

**Triad Marine & Industrial Cleaning Corporation; Industrial Indemnity, Plaintiff–Intervenor–Appellant.**

**Nos. 87–6395, 87–6414.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 8, 1988.

Memorandum July 5, 1988.

Order and Opinion Aug. 1, 1988.

Preston Easley, San Pedro, Cal., for plaintiff-appellant.

Philip A. Berns, Atty. in Charge, and William M. Duncan, Atty., Civil Div., San Francisco, Cal., for defendant-appellee.

Russell P. Brown, Littler, Mendelson, Fastiff & Tichy, San Diego, Cal., for plaintiff-intervenor-appellants.

Before TANG, FARRIS and KOZINSKI, Circuit Judges.

## PER CURIAM:

The district court granted summary judgment for the defendants in this admiralty case. We review de novo. *Solano v. Beilby,* 761 F.2d 1369, 1372 (9th Cir.1985).

### Facts

Employed as a tank cleaner for Triad Marine & Industrial Cleaning Corporation (Triad), Fernando Jacobo was injured when he entered a storage tank aboard the U.S.S. Norton Sound in order to adjust the placement of a pump. Approximately five minutes after entering the tank, Jacobo collapsed. He was rescued and removed from the tank by Navy personnel. Subsequent testing of the tank revealed a toxic level of hydrogen sulfide.

Jacobo claims the United States was negligent in not providing him with a safe place to work. Plaintiffs-in-intervention are seeking indemnity for monies paid to Jacobo.

Because this claim sounds in admiralty, *id.* at 1371, federal, rather than California, law applies. *Id.* at 1373; *see also Nelson v. United States,* 639 F.2d 469 (9th Cir. 1980).

### Issues

1. Jacobo claims that the Navy was negligent per se because it violated the *Naval Ships Technical Manual* Chapter 74, Volume 3, Sec. 18.7, which places a duty on the commanding officer of a vessel to assure that others (including contractors) conduct their operations according to applicable standards and laws. But the manual is not a regulation and does not have the force of law. *Schweiker v. Hansen,* 450 U.S. 785, 789, 101 S.Ct. 1468, 1471, 67 L.Ed. 2d 685 (1981); *Thompson v. United States,* 592 F.2d 1104, 1110 (9th Cir.1979). Thus, the alleged failure of the commanding officer of the USS Norton Sound to comply

with the naval manual would not provide a basis for negligence per se.

■ Nor does the contract's reference to the manual form a basis for holding the Navy liable. The contract requirement that "[a]ll work to be accomplished hereunder shall be in accordance with the following specifications and/or references as applicable," Supplemental Excerpt of Record at 26, only imposes a standard to which the contractor must adhere. It does not incorporate the manual wholesale into the contract, and does not contractually obligate the Navy to comply with the manual.

■ 2. Jacobo also alleges that the United States was negligent, relying on *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed. 2d 1 (1981). Under *Scindia*, the United States had a duty to warn Jacobo of any dangers of which it knew or should have known. *Id.* at 167, 101 S.Ct. at 1622. Plaintiffs have presented no affidavits or other evidence tending to show that the Navy knew or should have known of the hydrogen sulfide. Moreover, the Navy labeled the tank contaminated, placing Triad on notice that there might have been dangerous conditions in the tank; the contract assigned Triad the responsibility to test for such fumes.

Nothing in the record indicates that the Navy's knowledge of the potential danger was greater than that of Triad or Jacobo. Further, the evidence is uncontested that Jacobo's entry into the tank was unplanned and spontaneous; it was made contrary to the orders of Jacobo's supervisor, Morales. The Navy had neither a reasonable opportunity to warn Jacobo of any hazards, nor a duty to do so.

AFFIRMED.

TANG, Circuit Judge, dissenting:

I respectfully dissent. I agree that Jacobo has not adduced any evidence that the United States knew of the condition of the tank, thereby creating a duty to warn of unusual dangers under *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981).

However, I believe that the United States had a duty to enforce the Navy's own safety regulations and that summary judgment was thus inappropriate.

In *Scindia* the Supreme Court articulated the rule that a shipowner has no general duty to discover dangerous conditions that develop within the confines of operations assigned to stevedores, "absent contract provision, positive law, or custom to the contrary." *Id.* at 172, 101 S.Ct. at 1625. The Ninth Circuit has extended the same duties of care to employees of independent repair companies who are working on a vessel. *Cook v. Exxon Shipping Co.*, 762 F.2d 750, 752 (9th Cir.), *amended*, 773 F.2d 1001 (9th Cir.1985). The critical inquiry in this case is whether contract provisions, positive law or custom create a duty to supervise the tank cleanup operation. In my view, the contract requires compliance with the Navy's Technical Manual, Chapter 074 Volume 3, which sets out specific guidelines and requirements for gas free engineering, the most pertinent of which is the requirement that tanks be tested for toxic contaminants before employees enter.

Although the majority may be correct in saying the Navy's internal safety regulations do not have the force of law, its reliance on cases seeking review of a social security benefits determination, *Schweiker v. Hansen*, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) or damages under the Federal Torts Claim Act, *Thompson v. United States*, 592 F.2d 1104 (9th Cir.1979), is inappropriate in this admiralty case. There do not appear to be any maritime tort cases discussing the role of shipowners' safety rules in setting a standard of care, so I would look to the closely analogous body of federal law applying the Federal Employers' Liability Act (FELA). *See* Gilmore and Black, *The Law of Admiralty* (2d ed. 1975), passim (references to points of similarity between remedies for seamen under the Jones Act and remedies for railroad employees under FELA).

The FELA does not contain a statement of standards of care but it is clear that some duties, such as the duty to provide a

safe workplace, have become integral parts of the FELA. *Ragsdell v. Southern Pac. Transp.*, 688 F.2d 1281, 1283 (9th Cir.1982). It is well-settled in FELA cases that the internal safety rules of individual railroads set standards of care above and beyond those imposed by federal and state regulations. *See, e.g., Ackley v. Chicago and North Western Transp. Co.*, 820 F.2d 263, 266 n. 5 (8th Cir.1987) (noting that certain employer duties have become integral parts of the FELA, including the duty to promulgate and enforce safety rules, citing *Ybarra v. Burlington N., Inc.*, 689 F.2d 147, 150 (8th Cir.1982), which approved an instruction that a railroad must publish and enforce adequate safety rules in the exercise of its duty to use reasonable care in protecting its employees); *Bailey v. Grand Trunk Lines New England*, 805 F.2d 1097, 1102 (2d Cir.1986) (railroad has a duty to establish safety rules for the guidance and protection of its employees and, once promulgated, the employee is entitled to rely on these safety rules as the appropriate standard of conduct); *Moore v. Chesapeake & O. Ry. Co.*, 493 F.Supp. 1252, 1265 (D.W. Va.1980) (whether a railroad exercised care in making rules is a question for the jury).

Maritime law is solicitous of the safety and welfare of seamen, longshoremen and repairmen. I would therefore adopt the rigorous standards of the FELA, which is equally solicitous of the welfare of railroad workers, and hold that the Navy's internal safety regulations set the standard of care that should govern in this case. Accordingly, I would reverse and remand for for further proceedings.