**Daniel McDONOUGH, an individual, Plaintiff,**

v.

**Walter NOLLEY and Jane Doe Nolley, a marital community, d/b/a Wright's Dockside Marine; John Doe Cole and Jane Doe Cole, a marital community, d/b/a Wright's Dockside Marine; and Pick's Cove Marina, Inc., a Washington corporation, Defendants.**

**No. C89–157TB.**

United States District Court, W.D. Washington, at Tacoma.

Jan. 17, 1990.

Mark S. Anderson, Cozen and O'Connor, Seattle, Wash., for plaintiff.

Timothy J. Parker, Shane C. Carew, Carney, Stephenson, Badley, Smith & Spellman, Seattle, Wash., for defendants Nolley, Wright's Dockside Marine and Cole.

Rodney Q. Fonda, Madden, Poliak, MacDougall & Williamson, Seattle, Wash., for defendant Pick's Cove Marina, Inc.

## ORAL DECISION OF ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

### (REVISED FOR PUBLICATION)

BRYAN, District Judge.

In this conference call, I will rule orally on defendants' motion to dismiss on admiralty-jurisdiction grounds.[1]

Let me ask a question first. I did not see the beam of this boat listed anywhere. How wide is this boat?

MR. ANDERSON: I'd have to just give you an estimate, your Honor. I believe it's probably eight to ten feet.

MR. FONDA: I'm trying to check my file to see if I've got something authoritative that would say that.

THE COURT: Well, that's beside the point really. It might have added to my comments, but it wouldn't change them. Let me just tell you what I think and why. Let me state the bottom line first. I think admiralty jurisdiction does not attach in

---

1. In August 1988, Defendant Wright's Dockside Marina installed a new engine in the *Swiftsure,* a 26–foot vessel belonging to the plaintiff. The vessel is a pleasure boat commonly referred to as a "cigarette boat." The installation took place pursuant to a contract between Defendant Pick's Cove and the plaintiff. Defendant Wright subcontracted to do the actual work.

In September 1988, the *Swiftsure* was moored at a berth in a permanent boathouse at the Tacoma Yacht Club. The club and its moorage are located on the shore of, and on, the navigable waters of Puget Sound, respectively. When plaintiff attempted to start the boat's engine, it burst into flames. The flue in the engine caused the fire to quickly spread to the vessel, the boathouse, and other vessels moored at the Tacoma Yacht Club. Plaintiff alleges that the fire was caused by the negligent installation of the fuel system in the engine.

this circumstance. There are many reasons for this decision, which I will discuss.

There are four particular cases that give guidance to the court. In no particular order, they are: *Foremost Insurance Co. v. Richardson*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982); *Oppen v. Aetna Insurance Co.*, 485 F.2d 252 (9th Cir. 1973); and *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972); and *Solano v. Beilby*, 761 F.2d 1369 (9th Cir.1985).

I will start with some general comments about pleasure boats because this decision is partly an application of law, and partly an application of policy. We all know, even though there is no statistical showing here, that in this corner of the country and throughout similar areas of the country, there's a proliferation of pleasure craft. The burden of adding every pleasure-craft accident to the case load of the federal courts promises to create a substantial burden over time. As a matter of policy federal courts should be cautious in exercising jurisdiction over classes of cases where there is no compelling federal interest or compelling federal issue.

There are no really clear or bright lines that guide the federal judge in determining when to exercise admiralty jurisdiction. The basic rule of law is not in great dispute. It's the two-part test, found in the *Solano* decision, which requires a marine locale and a nexus to traditional maritime activity.

In this case, it's clear that we have a marine locale, even though it's not in an area where there are vessels moving back and forth. As I understand the facts here, this incident occurred on what is technically navigable water, even though it occurred in a place where boats are moored or stored, rather than moved. That provides at least minimal marine locality.

The second prong of the test, a nexus to traditional maritime activity, is a little more difficult to apply. It's not as clear as what is, or what is not, navigable water. The case which best describes what courts mean by "traditional maritime activity" is the *Executive Jet* case. Certainly traditional maritime activity includes the use of pleasure craft for pleasure purposes, and certainly using vessels for pleasure is an ancient maritime pastime. It seems to me, however, that the historic or the traditional law of admiralty was not developed with small-craft pleasure vessels in mind. I would quote particularly from *Executive Jet*, 409 U.S. at 269, 93 S.Ct. at 504–05 where the court discusses traditional maritime activity as follows:

The law of admiralty has evolved over many centuries, designed and molded to handle problems of vessels relegated to ply the waterways of the world beyond whose shores they cannot go. That law deals with navigational rules, rules that govern the manner and direction those vessels may rightly move upon the waters.

When a collision occurs or a ship founders at sea, the law of admiralty looks to those rules to determine fault, liability, and all other questions that may arise from such a catastrophe. Through long experience, the law of the sea knows how to determine whether a particular ship is seaworthy, and it knows the nature of maintenance and cure. It is concerned with maritime liens, the general average, captures and prizes, limitations of liability, cargo damage, and claims for salvage.

In applying that general statement to the facts at hand, and comparing that concept of traditional maritime activity to the accident we have here, it appears that the relationship of the plaintiff in his boating activities, to admiralty questions, is very slight. There is little relationship to issues which historically led to a separate law of admiralty.

I want to discuss a number of facts about this accident in light of what I just quoted from *Executive Jet*. First, it was interesting to me that the Supreme Court started out in *Executive Jet* by referring to vessels "relegated to ply the water-ways of the world beyond whose shores they cannot go." Twenty-six foot vessels are commonly not bound by the shore and are often moved on the land. As I understand the

state law, you don't even have to have a permit to move a vessel with an eight-and-one-half foot beam on the highways.

In regard to navigation rules, while they technically apply to this vessel, the navigation rules are more noted in the breach among small-craft pleasure boaters than in adherence to them. Regardless of that, there are no navigation rules at issue in this case, and the occurrence did not involve a collision or allision.

The rules of fault that may apply in this case are not, and need not be, governed by the law of admiralty any more than if the fire in issue in this case occurred at a dry-land marina or, for that matter, if the vessel had been an automobile garaged in a multicar garage on dry land. Determination of the applicable rules of fault does not require consideration of admiralty issues.

In further application of *Executive Jet* to this case, it is appropriate to comment about what this case is *not*. It's not a seaworthiness case. It does not involve maintenance, cure, maritime liens, the general average, captures and prizes, limitation of liability, cargo damage, or claims for salvage. In other words, this case can be fairly handled in a state court under state law. There is not a federal or other general policy, or a federal legal reason, or other general reason, that requires that admiralty jurisdiction be extended to cover this situation.

There is certainly authority for the proposition that admiralty jurisdiction, in a proper case, may extend to pleasure craft, and whether a vessel is a pleasure craft or a commercial craft is not the dividing line. The *Foremost* case stands for the proposition that the federal interest in protecting maritime commerce does not require the extension of admiralty jurisdiction to a situation that involves only pleasure craft and does not involve navigation rules or other issues that have the potential of affecting maritime commerce. The *Oppen* case is consistent with *Foremost*. *Oppen* involved a right of navigation, unlike this case.

■ I should comment on the *Solano* case. What I have said applies to the test set out in *Solano* for determining the nexus to traditional maritime activity. *Solano* refers to four factors at page 1371: The first is judicial concepts of the role of admiralty law. As I have stated, it's my concept and I think the concept of the courts from the Supreme Court on down, that this case does not fit into the role of admiralty law.

The second factor is the function and role of parties. This is not a commercial maritime activity. The parties are private citizens and people involved in maintenance and repair and marina operation. They are not involved in high-seas or navigable-water functions, other than at the edge of that water in moorage-type situations. The function and role of the parties does not militate towards admiralty jurisdiction.

The third factor is the type of vehicles and instrumentalities involved. In this case, a pleasure craft had a fire, allegedly as a result of a repair job that was botched, and there is, based on the type of vessel, no compelling reason to invoke admiralty jurisdiction.

The fourth factor is causation and nature of injury suffered. There is nothing peculiar to maritime activity that caused this occurrence, and the only maritime connection with the injuries suffered was that these were boats or boathouses as opposed to something that had no maritime connection at all. The nature of the injury and the fact that a vessel was involved does not necessarily militate towards admiralty jurisdiction. The fact that a boat was injured does not indicate that admiralty jurisdiction should attach, even when that vessel is injured on what is technically navigable water.

For those reasons, it's my judgment that the motion to dismiss should be granted and admiralty jurisdiction should not attach, and that leaves this court without jurisdiction. The case will be dismissed without prejudice.