577 So.2d 1039 (1991)
Allen ANTILL, et al.
v.
PUBLIC GRAIN ELEVATOR OF NEW ORLEANS, INC., et al.
No. 90-CA-1524.
Court of Appeal of Louisiana, Fourth Circuit.
March 28, 1991.
Writ Denied June 14, 1991.
*1040 Harry E. Forst, New Orleans, for plaintiffs-appellants Allen Antill, et al.
Duplass, Witman, Zwain & Williams, Gary M. Zwain, Joseph H. Morton, III, Metairie, for defendants-appellees Public Grain Elevator of New Orleans, Inc., and Peavey Co.
Wayne J. Fontanna, Scott P. Shea, Courtenay, Forstall, Guilbault, Hunter & Fontana, New Orleans, for defendants-appellees Bunge Corp.
Before KLEES, CIACCIO and LOBRANO, JJ.
KLEES, Judge.
Plaintiff Allen Antill is a longshoreman who from 1952 to 1987 worked for various stevedoring companies loading grain onto vessels from defendants' grain elevators along the Mississippi River. On May 12, 1988, plaintiff filed suit in Orleans parish civil district court against owners of the grain elevators and the manufacturer of safety gear he wore claiming that he had contracted grain asthma as a result of his continual exposure to grain dust. Plaintiff alleged that defendants were liable under the Louisiana law concepts of negligence and strict liability.
On January 30, 1990, defendants filed a motion for partial summary judgment seeking a declaration that plaintiff's claims arose under admiralty law and were therefore governed by federal substantive maritime law rather than Louisiana tort law. Following a hearing, the district court granted the motion and issued a judgment that federal admiralty law is to be applied in this case.
Plaintiffs have appealed that judgment. After reviewing the record, we affirm the district court's judgment.
A plaintiff whose claims are cognizable in admiralty may choose to bring suit in federal court pursuant to its admiralty jurisdiction or in state court under the savings to suitors clause; in either case, however, the federal substantive maritime law applies. McCraine v. Hondo Boats, Inc., 399 So.2d 163 (La.1981). Therefore, the sole issue raised by defendants' motion for partial summary judgment is whether plaintiff's claims come within the admiralty jurisdiction.
The seminal case on admiralty jurisdiction is Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), in which the Supreme Court set forth two requirements for maritime jurisdiction in tort cases: (1) locality (the tort occurred on or over navigable waters); and (2) maritime nexus, defined as "a significant relationship to traditional maritime activity." Executive Jet, supra, 409 U.S. at 268, 93 S.Ct. at 504, 34 L.Ed.2d at 465. In the instant case, the locality test is admittedly met because plaintiff contracted his illness while shoveling grain as it came into the hulls of vessels docked in navigable waters. Plaintiff contends, however, that the requirement of a maritime nexus is lacking.
In Kelly v. Smith, 485 F.2d 520 (5th Cir.1973), the court set forth four factors to be considered in determining whether an alleged tort has a significant nexus to traditional maritime activity for purposes of admiralty jurisdiction. Those four factors are: (1) the functions and roles of the parties; (2) the types of vehicles and instrumentalities involved; (3) the causation and the type of injury; and (4) traditional concepts of the role of admiralty law. 485 F.2d at 525.
*1041 With regard to the functions and roles of the parties, we have stated that "the proper question is whether the actual tasks the worker performs bears [sic] any inherent relationship to maritime activity." Dean v. State, 542 So.2d 742, 746 (La.App. 4th Cir. 1989), writ denied 544 So.2d 410 (La.1989); Woessner v. Johns-Manville Sales Corp., 757 F.2d 634, 644 (5th Cir.1985). In Dean, the plaintiff was an ironworker constructing a bridge over navigable water, and we found that his job was not significantly related to maritime activity. In the instant case, however, the plaintiff's task was to load and unload cargo on vessels, which "falls squarely within the ambit of traditional maritime services or activities." Solano v. Beilby, 761 F.2d 1369 (9th Cir. 1985). Defendants are the owners of grain elevators, which function is not particularly maritime; nevertheless, these grain elevators were located near navigable water and were designed to empty grain directly onto vessels. On balance, therefore, we find the first Kelly factor to be more maritime than not.
The second factor to be considered is the vehicles and instrumentalities involved. Again, plaintiff worked on vessels, which are obviously related to maritime activity. Although grain elevators are predominantly non-maritime, in this instance because of their location and design they were not wholly without any maritime nexus. Cf. Taylor v. Kennedy Engine, Inc., 861 F.2d 127, 129 (5th Cir.1988). The grain itself can be considered cargo in the process of being loaded onto a ship. Cf. Moser v. Texas Trailer Corp., 623 F.2d 1006, 1009 (5th Cir.1980) (wherein the court considered a housing module being lifted onto a vessel as cargo and therefore maritime in nature). In Kelly, which involved rifle fire directed at deer poachers fleeing in a boat, the court stated that the firearms, although not maritime, were "not so inherently indigenous to land as to preclude any maritime connection." 485 F.2d at 526. In the instant case, the same can be said of the grain elevators, the grain, and even the protective equipment worn by the plaintiff while loading the grain.
The third factor to be considered in determining maritime nexus is the causation and type of injury. In the instant case, the injury was allegedly caused by the inhalation of a grain dust, not an inherently maritime factor. The disease itselfgrain asthmais also non-maritime; nevertheless, it was contracted by plaintiff while working aboard vessels as a stevedore, a maritime occupation. In this respect, the instant case is clearly distinguishable from the asbestos/silicosis cases so heavily relied upon by plaintiff. See Woessner v. Johns-Manville Sales Corp., supra. In Woessner, the plaintiffs were asbestos insulators employed throughout their careers by various Louisiana insulation contractors doing both maritime and non-maritime insulation work. 757 F.2d at 637. They were suing the asbestos manufacturers after having contracted lung diseases from continual exposure to asbestos. The Woessner court emphasized that tearing out and replacing asbestos insulation is not work traditionally performed by seamen. Id. at 644-646. Conversely, the plaintiff in the instant case alleges that he contracted his disease while working as a longshoreman loading and unloading cargo onto vessels, which is clearly maritime work. In Solano v. Beilby, supra, which involved longshoremen who were injured while loading an automobile onto a vessel, the court concluded that the mere fact that the plaintiffs' injuries were caused by shore-based negligence did not preclude the extension of admiralty jurisdiction when the injuries occurred on board a vessel. 761 F.2d at 1372.
The fourth factor delineated by the Kelly court is the traditional concepts of the role of admiralty law. This factor requires that the court examine whether the exercise of federal admiralty jurisdiction over the claim would otherwise advance the policies behind a uniform law of admiralty. Woessner v. Johns-Manville Sales Corp., supra, 757 F.2d at 643. In Woessner, the court concluded that where some of the factors cited in Kelly counsel in favor of assuming admiralty jurisdiction and some against, particular emphasis should be placed on this fourth factor. Id. Because the instant case involves the loading of cargo on vessels, a traditional maritime activity, *1042 there is an important national interest which militates in favor of admiralty jurisdiction. Moser v. Texas Trailer Corp., supra, 623 F.2d at 1009. As the court in Solano v. Beilby held:
The loading of cargo onto a vessel by two longshoremen falls squarely within the ambit of traditional maritime services or activities in furtherance of commerce. The goal of uniformity in the law governing maritime industries and the concern for providing remedies to those confronting the dangers of maritime employment militate toward admiralty jurisdiction in this case.
761 F.2d 1369, 1371 (Citations omitted). We adopt the reasoning of the court in Solano. In doing so, we note that virtually all the cases cited by both plaintiff and defendants in which the injury occurred during the loading or unloading of cargo have found admiralty jurisdiction appropriate. See, e.g.: Solano v. Beilby, supra; Moser v. Texas Trailer Corp., supra; Drachenberg v. Canal Barge Co., Inc., 571 F.2d 912 (5th Cir.1978); Hails v. Atlantic Richfield Co., 595 F.Supp. 948 (W.D.La. 1984); Morales v. City of Galveston, 181 F.Supp. 202 (S.D.Tex.1959), aff'd, 275 F.2d 191 (5th Cir.1960).
Accordingly, for the reasons given, we affirm the partial summary judgment granted by the district court holding that federal substantive maritime law applies in this case.
AFFIRMED.