Graham WHITCOMBE,
Plaintiff–Appellant,

v.

STEVEDORING SERVICES OF AMER-
ICA, doing business as Pacific Container
Terminal, Defendant–Appellee.

No. 91–56530.

United States Court of Appeals,
Ninth Circuit.

Submitted April 7, 1993.*

Decided June 16, 1993.

As Amended Aug. 16, 1993.

---

* This case is appropriate for submission on the briefs and without oral argument per FED. R.APP.P. 34(a) and 9th Cir.R. 34–4.

George P. Hassapis, Fisher and Porter, Long Beach, CA, for plaintiff-appellant.

Paul W. Chandler, Baker & Hostetler, McCutchen Black, Long Beach, CA, for defendant-appellee.

Before NOONAN and TROTT, Circuit Judges, and FITZGERALD,** Senior District Judge.

FITZGERALD, Senior District Judge:

Plaintiff Graham Whitcombe ("Whitcombe"), an Australian citizen, came to the United States in May of 1990 on a business venture. Whitcombe and Paul Rawsthorne ("Rawsthorne"), another Australian, sought to purchase American "muscle cars" for export to and resale in Australia. They expected a substantial profit due to the popularity and scarcity of the cars in their country. After a month-long search, Whitcombe bought two cars, a 1984 Pontiac Trans Am and a 1985 Chevrolet Camaro, for a total of $7,026.35. Rawsthorne also bought two cars, a 1981 Pontiac Trans Am and a 1977 Chevrolet Corvette. Rawsthorne then returned to Australia. Whitcombe engaged a freight forwarder, Dal Ainsa ("Ainsa") for shipment of all four of the cars. Ainsa telephoned China Ocean Shipping Company ("COSCO") and booked passage aboard the vessel "TA HE". The cars were loaded into a container, taken to the loading area at the port of Long Beach, and turned over to Stevedoring Services of America, Inc. ("SSA"). SSA, the

sole defendant in this case, provides terminal operation and stevedoring services for COSCO pursuant to a written agreement. No dock receipt was issued for the container. While the container was in the main stacking area of the SSA terminal, it fell from a two-container stack and the cars were damaged. Because the cargo was damaged before it was loaded onto the "TA HE", COSCO refused to accept the container and no bill of lading was issued.

Whitcombe sued for damages under the court's diversity jurisdiction. SSA admitted negligence but contested the claim for damages. A bench trial was held before the Honorable Judge Ronald Lew on August 21, 1991. At the conclusion, the district court entered findings of fact and conclusions of law holding that California state bailment law limited Whitcombe's damages to the declared value of the cars. On appeal, Whitcombe claims that federal admiralty law, rather than state law, controls SSA's liability and that no bailment was created between SSA and Whitcombe for the cars. We affirm.

## ANALYSIS

### I. Jurisdiction

#### A. *Standard of Review*

The existence of subject matter jurisdiction is a question of law reviewed *de novo. Reebok Int'l, Ltd. v. Marnatech Enterprises, Inc.,* 970 F.2d 552, 554 (9th Cir. 1992). The district court's factual findings on jurisdictional issues must be accepted unless erroneous. *Id.*

#### B. *Discussion*
##### 1. Admiralty Jurisdiction

The district court found that SSA "was a terminal operator at all relevant times" and that the damage occurred on land. These factual findings formed the basis for the court's legal conclusion that the claim was grounded in state rather than admiralty law. We uphold these findings as supported by the record.

** The Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation.

■ Suits against operators for cargo damage or loss while in storage are governed by state rather than admiralty law. *Roco Carriers, Ltd. v. M/V NURNBERG EX-PRESS*, 899 F.2d 1292 (2d Cir.1990); *Colgate Palmolive Co. v. S/S DART CANADA*, 724 F.2d 313 (2d Cir.1983) *cert. denied*, 466 U.S. 963, 104 S.Ct. 2181, 80 L.Ed.2d 562 (1984); *Leather's Best, Inc. v. S.S. MORMACLYNX*, 451 F.2d 800 (2d Cir.1971). However, "[t]he Second Circuit is the only circuit that has specifically addressed the applicability of admiralty jurisdiction to terminal operators" for storage damage or loss. *Solano v. Beilby*, 761 F.2d 1369, 1372 (9th Cir.1985).

In *Leather's Best*, a cargo load of leather arrived in Brooklyn, was unloaded by the stevedore, and placed in the custody of the terminal operator. *Leather's Best*, 451 F.2d at 806. When the consignee arrived to pick up the cargo, it had disappeared. The court held that the terminal operator's liability was determined by New York law because the injury occurred on land in New York. *Id.* at 808. Twelve years later, the Second Circuit saw no reason to alter the *Leather's Best* holding that "an action against a terminal for negligent loss of cargo is not within federal maritime jurisdiction, but is a state claim governed by state law." *Colgate Palmolive*, 724 F.2d at 315. Similarly, in *Roco Carriers*, the court held that "inasmuch as any claim against [the terminal operator] arose while the cargo was on land, [it] is grounded on state law and not within federal admiralty jurisdiction." *Roco Carriers*, 899 F.2d at 1295.

In *Solano*, the Ninth Circuit held that a suit by longshoremen [1] against a terminal operator for injuries suffered on a ramp while loading the vessel was within the court's admiralty jurisdiction. *Solano*, 761 F.2d at 1372. Although *Solano* has some factual similarities to the present case, damage to cargo in the terminal operator's warehouse is jurisdictionally distinguishable from damage that occurs while loading the vessel. In *Solano*, an Australian citizen bought a car in the United States and arranged through a freight forwarder to ship the car home. The car was deposited with the terminal operator but not enclosed in a container. The stevedore attempted to load the car by having one of its longshoremen steer the car while the other pushed it with a jitney. When the car was pushed down a ramp onto the ship, it started to accelerate. When the brakes failed, both of the longshoremen were injured. They brought suit against the terminal operator claiming that the terminal operator, as a bailee, had a duty to inspect the car and warn of the defective brakes.

■ The court analyzed its jurisdiction under the two-part test of *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972).[2] The

---

1. "In the vocabulary of maritime cases, the 'stevedore' is a company which provides loading and unloading services to shipowners. The 'stevedore' hires longshoremen, individuals who do the work." *Marr Equipment Corp. v. I.T.O. Corp. of New England*, 14 Mass.App.Ct. 231, 437 N.E.2d 1076, 1076 n. 2 (1982). A terminal operator stores the cargo before and after ocean transportation. *Colgate Palmolive*, 724 F.2d at 316 n. 6.

2. *Executive Jet* clarified that admiralty jurisdiction generally requires both that the injury occur on navigable waters and that the activity bear a sufficient relationship to maritime commerce. *Executive Jet*, 409 U.S. at 268, 93 S.Ct. at 504. These are sometimes described as the locality or situs and the nexus or relationship requirements. *Solano*, 761 F.2d at 1370–71. Congress and the courts have created a limited set of *exceptions* extending admiralty jurisdiction to torts that do not occur on navigable waterways. *See Executive Jet*, 409 U.S. at 259–61, 93 S.Ct. at 500. None of these exceptions apply to the present

case. In *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982) and *Sisson v. Ruby*, 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990) the Court refined and clarified the appropriate analysis to determine if a tort occurring on navigable waters has a sufficient nexus to traditional maritime activities. We do not believe that these decisions eliminate the locality test. A number of decisions after *Sisson* state that the two-part test for admiralty jurisdiction requires both a location on navigable waters and a sufficient relationship to maritime activities. *Sinclair v. Soniform, Inc.*, 935 F.2d 599, 601 (3d Cir.1991); *Palmer v. Fayard Moving and Transp. Corp.*, 930 F.2d 437, 439 (5th Cir. 1991); *Unigard Sec. Ins., Co. v. Lakewood Eng'g. & Mfg. Corp.*, 982 F.2d 363, 366 (9th Cir.1992). When the injury occurs on land, admiralty jurisdiction is normally not proper. *David Wright Charter Serv. of North Carolina, Inc. v. Wright*, 925 F.2d 783, 784 (4th Cir.1991) (per curiam). A recent Ninth Circuit decision discusses admiralty jurisdiction without explicitly discussing the

fact that the accident occurred on the ramp to a ship satisfied the first requirement that the injury occur on water. The second requirement was also met because the loading of a vessel by a stevedore has a sufficient nexus to traditional maritime activities. Therefore, the court held that the claim fell under federal admiralty jurisdiction and applied federal rather than state bailment law.

The court in *Solano* was careful to distinguish *Leather's Best* and its progeny. In dicta, the court asserted the continuing validity of this line of cases.

> [E]ven if *Leather's Best* had been decided after *Executive Jet*, the result would have been the same, because the Supreme Court's requirements for maritime situs and nexus for admiralty tort jurisdiction are conjunctive. The nonmaritime situs of the loss of cargo would have dictated the application of state law.

*Solano v. Beilby*, 761 F.2d 1369, 1372 (9th Cir.1985).

▆▆▆▆ We agree. As the court in *Solano* stated, the nonmaritime location of the injury is normally dispositive. Even if the lack of maritime jurisdiction were not settled by the nonmaritime location of the injury, we conclude that the claim in the present case does not bear a sufficient nexus to traditional maritime activities to warrant application of admiralty law. In *Solano*, maritime law applied because the injury occurred on a vessel while the stevedores were engaged in the traditional maritime activity of loading cargo for shipment by sea. *Solano*, 761 F.2d at 1371. In the present case, state law applies because the injury occurred on land while the terminal operators were storing the container. Although the container was stored in anticipation of eventual shipment by sea, the activity was more analogous to the warehousing of goods under state law than it was to a

traditional maritime activity. We apply a four-part inquiry to determine if there is a sufficient nexus to traditional maritime activities. *Id.* The first part analyzes the traditional admiralty principles of providing uniformity in the law and an adequate remedy to the injured party. We see nothing injurious to maritime principles in holding a terminal operator to the same level of liability as that of other warehouse operators in the state. A cargo owner has the same adequate remedy against the terminal operator as the cargo owner has against a warehouse operator for cargo damaged in an inland warehouse. Under the remaining parts of the analysis, we hold that the roles of the parties, the types of instrumentalities involved, and the nature of the injury suffered all suggest an insufficient nexus with maritime activities for the exercise of admiralty jurisdiction. *See Delta Country Ventures*, 986 F.2d at 1263 (fourth element excludes causation and is limited to the nature of the injury after *Sisson v. Ruby*, 497 U.S. 358, 364–65, 110 S.Ct. 2892, 2897, 111 L.Ed.2d 292 (1990)). Therefore, we adopt the rule established by the Second Circuit that a claim against a terminal operator for damage to cargo is controlled by state law.

In adopting this rule of law, we emphasize the distinction between stevedores and terminal operators. A stevedore is responsible for loading and unloading the vessel. *Colgate Palmolive*, 724 F.2d at 316 n. 6. A terminal operator provides storage for cargo at the terminal before and after shipment. *Id.* Sometimes the two operations are performed by the same company, as may have been the case with defendant Stevedoring Services of America/Pacific Container Terminal. But the relevant inquiry is the nature of the conduct that produces the claim. In *Colgate Palmolive*, the court held that the defendant could not claim it was "only a stevedore"

---

locality requirement. However, the accident did in fact occur in navigable waters. *Delta Country Ventures, Inc. v. Magana*, 986 F.2d 1260, 1262 (9th Cir.1993) ("a diving accident on navigable waters").

While some learned treatises on admiralty law urge abandonment of the locality test, *see* 7A JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 325[5], p. 3608 (2d ed. 1993) ("the time to scrap the relevancy of locality ... is long over-

due"), some members of the Court have argued the opposite in the area of vessel collisions, *see Sisson*, 497 U.S. at 374, 110 S.Ct. at 2902 (Scalia, J., dissenting) ("more straightforward to jettison the 'traditional maritime activity' analysis entirely, and to return (for vessels) to the simple locality test"). Whatever the eventual resolution of this debate, we are satisfied that admiralty tort jurisdiction currently retains the locality requirement.

when it also performed "marine terminal" services. *Id.* at 316. Because the defendant acted as a terminal operator for the damaged cargo, state law determined the defendant's liability for the loss regardless of its other stevedoring activities. *See La Salle Machine Tool, Inc. v. Maher Terminals, Inc.,* 611 F.2d 56, 59 n. 4 (4th Cir.1979) (distinguishing "unique status of stevedore" from "terminal operator performing a non-maritime function"). We simply hold that the district court properly applied California law to Whitcombe's claims against SSA as a terminal operator.

## II. Bailment and Damages

### A. *Standard of Review*

 A district court's interpretation of state law is reviewed under the same independent *de novo* standard as are questions of federal law. *Salve Regina College v. Russell,* 499 U.S. 225, 231–32, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991). A trial judge's findings of fact are reviewed under a clearly erroneous standard. FED.R.CIV.P. 52(a); *Brooker v. Desert Hospital Corp.,* 947 F.2d 412, 414 (9th Cir.1991).

### B. *Discussion*

 Whitcombe alleges that the district court erred in concluding that a bailment was created between Whitcombe and SSA and in applying California Civil Code § 1840 to limit SSA's liability to the declared value of the cars. We uphold the findings of fact and the conclusions of law of the district court on these issues.

 The district court found that a bailment was created when Whitcombe caused the cars to be delivered to SSA. Whitcombe undertakes to minimize the effect of the delivery by arguing that SSA was COSCO's agent. We fail to see the legal relevance of this argument. Whether SSA was an agent of COSCO or an independent contractor may change COSCO's liability, but it has no effect on the liability of SSA. *Inter–Ocean (Free Zone), Inc. v. Manaure Lines, Inc.,* 615 F.Supp. 710, 715 (S.D.Fla.1985). A terminal operator may be both an agent of the carrier and a bailee of the cargo for the cargo owner.

*Id.; Minemet, Inc. v. M.V. MORMACDRA-CO,* 536 F.Supp. 769, 771 (S.D.N.Y.) *aff'd,* 714 F.2d 115 (2d Cir.1982). Any error in the district court's determination that SSA was not COSCO's agent is harmless.

The district court relied on *Stein Hall & Co., Inc. v. S.S. CONCORDIA VIKING,* 494 F.2d 287 (2d Cir.1974), for the principle that when a cargo owner voluntarily delivers cargo to a terminal operator for storage and eventual shipment, a bailment is created between the owner and the terminal operator. Whitcombe asks us to ignore the decision as an aberration. We decline to do so. Many different published decisions support the holding in *Stein Hall. Colgate Palmolive,* 724 F.2d at 316 (calling a terminal operator a "warehouseman" under New Jersey UCC); *Leather's Best,* 451 F.2d at 813 (bailee under New York law); *Ferrex International, Inc. v. M/V RICO CHONE,* 718 F.Supp. 451, 457 (D.Md.1988) ("warehouseman" under Maryland UCC); *Inter–Ocean (Free Zone),* 615 F.Supp. at 715 (calling the case law on this point "overwhelming"); *Minemet,* 536 F.Supp. at 771 (bailee under New York law).

 California law generally defines a bailment as the delivery of a thing in trust for a purpose upon an implied or express contract. *Greenberg Brothers, Inc. v. Ernest W. Hahn, Inc.,* 246 Cal.App.2d 529, 54 Cal. Rptr. 770, 772 (1966). The district court's determination that Whitcombe's actions fit this definition is not clearly erroneous. Therefore, we uphold the district court's determination that a bailment relationship existed between SSA and Whitcombe for the storage of the cars. The California Civil Code uses the term depository and depositor in place of the common law terms bailee and bailor. CAL.CIV.CODE § 1840 (West 1985). The terms mean the same things. Under the statute, the district court was correct to limit Whitcombe to the declared value of the cars. *Windeler v. Scheers Jewelers,* 8 Cal.App.3d 844, 88 Cal.Rptr. 39, 46 (1970) (interpreting § 1840 to "mean that the amount of damages recoverable for the loss of goods through the negligence of a bailee is limited to the value thereof as disclosed by the owner").

Finally, Whitcombe contends that it was error for the district court not to make find-

ings on the allegation of a joint venture between Whitcombe and Rawsthorne. However, Whitcombe fails to point to any evidence in support of his contention of joint venture and we decline to overrule the district court on this issue.

The decision of the trial court is AFFIRMED.